**STATE of Iowa, Appellee,**

v.

**William NIMS, Jr., Appellant.**

**No. 83–784.**

Supreme Court of Iowa.

Nov. 14, 1984.

Charles L. Harrington, Appellate Defender, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Joseph P. Weeg, Asst. Atty. Gen., and James C. Bauch, County Atty., for appellee.

HARRIS, Justice.

Defendant was convicted of first-degree kidnapping under Iowa Code sections 710.2 and 902.1 (1981) in connection with the abduction and sexual abuse of an eight-year old girl. On appeal he presents two assignments of error. We affirm the trial court.

The victim was walking with a friend, another eight-year old girl, to school in

Waterloo when defendant pulled up beside her in a pick-up truck. Defendant got out of the truck and chased the two girls. He grabbed the screaming victim, picked her up, and forced her into his truck. He put the child on the floor of the truck's passenger side and held her down as he drove away. Defendant then drove to an area in a park, stopped, carried the child in his arms some distance away in a wooded area, and tore off the girl's undergarments. He took off his own clothes and achieved some penetration of the child's sex organ with his own.

Afterwards, according to his testimony, he was taking her to her school when he was stopped by the police.

I. The first assignment challenges a trial court evidentiary ruling which allowed a police officer to detail a statement made by the child in her home about 10:00 a.m. the same day. The abduction had begun at about 8:30 a.m.

Her statement, made following her examination by a doctor, was in the presence of the officer and the child's mother. The officer testified the child was "noticeably shaken" and "looked like a young lady [who] was very upset." Then, over defendant's objection that it was hearsay, the officer related the child's statement which detailed what had happened from the time of her abduction until she was rescued by the police.

The State responds to the assignment on three alternative grounds. It asserts the statement was not hearsay; if so it falls within the excited utterance exception to the hearsay rule; and, in any event, was harmless error. Without suggesting any views on the State's first two responses, we pass them and rest our affirmance on the ground that any error was harmless.

 It is well established that the admission of hearsay evidence over a proper objection is presumed to be prejudicial error unless the contrary is affirmatively established. *State v. Brown*, 341 N.W.2d 10, 15 (Iowa 1983). The contrary is established when the record shows that the challenged

evidence did not impact on the jury's finding of guilt. We think the record here easily qualifies.

A number of factors, taken together, lead to this determination. The challenged statement was cumulative. The child recited the same facts as a witness at trial. She was cross-examined concerning the details of the sexual abuse. In spite of her youth, she was an articulate and, obviously, effective witness.

There was unusually strong corroboration. The abduction was described by the girl's companion and by a nearby resident. The sexual abuse resulted in physical trauma which was described by an examining physician (inflammation of vaginal area consistent with recent penetration by a penis).

Defendant was examined by a psychiatrist who testified as a witness for the State. There was no objection when this witness related the medical history taken from the defendant at the time of the examination. The psychiatrist recounted defendant's recitation of the entire episode, including the abduction, the taking of the child to the park in his truck, the sexual abuse, and an attempt to take her to school at the time he was apprehended.

A police officer testified he apprehended the defendant with the child still in his truck. There was photographic evidence of the dirt and debris on the clothes and knees of the defendant. A photograph of the girl showed that her stockings contained material that appear to be burrs picked up from the ground.

 The case against defendant, even without the challenged evidence, was more than overwhelming. It was ironbound. Admission of the statement he challenges as hearsay did not hurt defendant's chance for acquittal because, as a practical matter, he had none. His counsel could easily see this and based the defense, not on disputing the facts, but by asserting diminished responsibility.

Any error was harmless.

II. Defendant's second assignment is a constitutional challenge to his mandatory life sentence. He argues it is cruel and unusual punishment, in violation of the eighth and fourteenth amendments to the United States Constitution and article I, section 17 of the Iowa Constitution. We answered the question adversely to defendant in *Lamphere v. State,* 348 N.W.2d 212, 220–21 (Iowa 1984). In seeking to elude the *Lamphere* holding defendant challenges the statute as it is applied to him, not facially. He relies on *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). We reject the challenge and adhere to the *Lamphere* decision.

*Solem* lists three factors to be considered in such a challenge: (1) the gravity of the offense and harshness of the penalty; (2) the treatment of others in this jurisdiction who commit crimes of equal or greater severity; and (3) the treatment of persons in other jurisdictions who commit the same crime. 463 U.S. at ——, 103 S.Ct. at 3010, 77 L.Ed.2d at 649–50.

In Iowa, any person convicted of first-degree kidnapping is subject to a mandatory life prison sentence. No parole is possible unless the sentence is commuted to a term of years by the governor. Iowa Code sections 710.2, 902.1, 902.2 (1981). *See State v. Knupp,* 310 N.W.2d 179, 183–84 (Iowa 1981).

There is a serious threshold matter which we can pass. It is questionable whether the three factors given in *Solem* are even applicable in this noncapital case:

> Outside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare. This does not mean, however, that the proportionality analysis is entirely inapplicable in noncapital cases.

463 U.S. at ——, 103 S.Ct. at 3009, 77 L.Ed.2d at 649. If the factors do not apply, we are left with the principle that the length of a felon's sentence in a state penitentiary is "purely a matter of legislative prerogative." *Rummel v. Estelle,* 445 U.S. 263, 274, 100 S.Ct. 1133, 1139, 63 L.Ed.2d 382, 391 (1980).

We can set aside the threshold question because defendant's sentence was not cruel and unusual punishment under the *Solem* three-part test. Defendant's analysis of the first two *Solem* factors is flawed because he grossly understates the seriousness of his crime. He points out that only two other offenses in Iowa—murder in the first-degree and sexual abuse in the first-degree—carry a mandatory penalty of life imprisonment and argues:

> The level of injury to the victim under the kidnapping statute and the facts of this case contrast markedly with that required in the first-degree murder and first-degree sexual abuse contexts.

Defendant's point is grounded on his views concerning the seriousness of the crime. In his statement of the facts he says:

> Dr. Gregorio Kazenelson, a pediatrician, testified he examined [the victim] later that morning. He observed an inflammation of her vaginal area consistent with recent penetration of one to one and one-half inches by a penis. Neither he or any witness testified that [the victim] had suffered any serious injury.

The legislature obviously took the view that this child did indeed suffer a serious injury and, to put it mildly, we are not inclined to disagree. We think the legislature was clearly entitled to believe the injury to this child was incalculable, as devastating as any imaginable. We know of no requirement that the legislature consider the kidnapping and sexual abuse of this eight-year old girl to be less serious than murder.

Defendant makes the point that, because we do not have capital punishment in Iowa, a life sentence is the most serious punishment possible. But this gives him no cause of complaint. When we did have capital punishment in Iowa a person convicted of rape (which on these facts defendant was

guilty of) could receive a nonmandatory life sentence. *See* Iowa Code § 698.1 (1962). Surely there was no requirement that the punishment for noncapital crimes must be lessened because capital punishment is abolished.

Defendant is also wrong in his analysis of the third *Solem* factor. Iowa is not alone in calling for a life sentence for a crime similar to defendant's. The State points out there are five other states with provisions similar to ours. *See* Mich.Comp. Laws Ann. §§ 750.349, 769.9 (1968); Nev. Rev.Stat. §§ 200.310, 200.320 (1980); S.D. Codified Laws Ann. §§ 22–6–1(2), 22–19–1, and 24–15–4 (1979 and Supp.1983); Tenn. Code Ann. §§ 39–2–301, 39–2–604, 39–1– 703 (Supp.1983); W.Va. Code § 61–2–14(a) (1977). Although there are limitations in the application of the statutes in South Dakota and in Nevada, we think the third *Solem* factor is satisfied. Other states also call for a life sentence for the acts of which defendant stands convicted.

■ We hold it was within the legislature's prerogative to fix a mandatory life punishment for defendant's crime.

AFFIRMED.

All Justices concur except WOLLE, J., who concurs in part and dissents in part.

WOLLE, Justice (concurring in part and dissenting in part).

Although I concur in Division II of the majority opinion, I dissent from Division I and would remand this case for a new trial. I am unwilling to label as harmless error the admission of the police officer's narrative testimony about what the victim told him shortly after the incident. That testimony was hearsay, it was not an excited utterance, it was relevant on the disputed issue of specific intent, and it was more than merely cumulative of other evidence.

I. The State contends that the testimony was not hearsay because it was offered only to show that the child had made a

complaint, not to prove the truth of what she had said. *See State v. Stevens*, 289 N.W.2d 592, 595–96 (Iowa 1980). Our cases point out, however, that only the fact of complaint—such as an oral report of the time and place of the incident to another— is outside the hearsay rules; narrative details "turn the statement into a hearsay assertion ..., inadmissible except as a spontaneous declaration." *Id.* at 595 (quoting *State v. Grady*, 183 N.W.2d 707, 716 (Iowa 1971). Here, the officer was allowed to repeat to the jury the lengthy, detailed version of the incident which he had obtained from the victim by questioning her. Moreover, no limited purpose for the offer of this testimony was proposed by its proponent nor acknowledged and explained to the jury by the trial court. The officer's testimony about what the victim told him was hearsay, not just a brief non-hearsay report of the incident.

II. The State contends that the testimony was admissible under the excited utterance exception to the hearsay rule. *See State v. Ogilvie*, 310 N.W.2d 192, 196 (Iowa 1981) (adopting definition of Fed.R.Evid. 803(2), identical to present Iowa R.Evid. 803(2)); *State v. Stevens*, 289 N.W.2d at 596 (admitting responses to questions which were "impulsive, not reflective"). The trial court here, however, made no preliminary determination that the victim's statements to the officer were spontaneous in any sense. The circumstances in this record belie the State's claim of spontaneity. The officer testified that the victim was calming down by the time she was questioned by the officer approximately 1½ hours after the event. Everything she said was in direct response to the officer's questions. Her narrative statements were clearly prompted by the questioning, not by the event. As in *State v. Brown*, 341 N.W.2d 10, 13 (Iowa 1983), the State here did not meet the foundational criteria for an excited utterance exception to the hearsay rule. The questioning of the officer was calculated to illicit information which would otherwise have been withheld. The

officer's hearsay testimony was not admissible as an excited utterance.

III. The State contends and the majority opinion holds that the defendant was not harmed by the officer's testimony for two reasons: (1) the testimony did not really touch on a disputed issue; and (2) the testimony was merely cumulative of other evidence in the record. I disagree.

We cannot know exactly what evidence made the greatest impression on the minds of the jurors, but we do know from the jury instructions what the prosecution had to prove beyond a reasonable doubt to convict defendant of kidnapping in the first degree. This was a specific intent offense. To obtain a conviction the prosecution was required to prove beyond a reasonable doubt that defendant not only confined the victim or moved her from place to place but also accompanied that act with the intent to subject the victim to sexual abuse. Iowa Code §§ 710.1(3), 710.2 (1981). The trial court properly instructed the jury:

> Intent is a mental state, emotion, or condition of the mind with a design, resolve, or determination that the doing of an act shall be with a certain purpose. As such, intent is seldom, if ever, capable of direct and positive proof. Rather, the intent, if any, may be arrived at by such reasonable inferences and deductions as may be drawn from the facts proved by the evidence, in accordance with common experience and observation.

See *State v. Rinehart*, 283 N.W.2d 319, 320–21 (1979), *cert. denied*, 444 U.S. 1088, 100 S.Ct. 1049, 62 L.Ed.2d 775 (1980). With specific intent the jugular issue, and intent provable only from facts showing what defendant had done, the officer's hearsay narrative testimony about what the victim told him touched on the key disputed question in the case. Defendant, after all, staked his defense on the prosecution's inability to prove specific intent. He offered evidence of diminished capacity, testimony by a psychiatrist that defendant did not have sufficient mental capacity at the time of the incident to form the requisite specific intent because he suffered from unconscious emotional needs which overwhelmed his thinking mind. Regardless what the jury thought of that psychiatric testimony, and regardless how credible was the officer's hearsay testimony, I cannot conclude that the hearsay testimony was not relevant and important on the core issue of specific intent.

Finally, I view the officer's hearsay testimony as fundamentally different from and not merely cumulative of other evidence presented in this case. Granted there was other evidence about what happened from the time defendant was first seen until he was arrested: the child victim testified; the girl she was with that morning corroborated some details; and a psychiatrist who had interviewed defendant related defendant's version of what happened. None of that evidence, however, was the equivalent of the narrative testimony given by the police officer. The officer's hearsay testimony included several details pertinent to the issue of specific intent which were not mentioned in the testimony of any other witness. For example, in describing what the victim told him had first occurred that morning, the officer testified:

> [Defendant] picked her up like a sack of potatoes. She was screaming. If I remember correctly at that point, he put her in the pickup on the passenger's side, put her down on the floor and held his hand on her while he drove away and told her to shut up or be quiet.

No other witness, not even the victim, said she was picked up quite like that. No other witness said she was screaming. No other witness said defendant held her down on the floor, or held his hand on her, or told her to be quiet. Those details would be consistent with an intent to carry the victim away for the purpose of committing a sexual abuse. The jury may have drawn such an inference from that testimony. I certainly am unwilling to speculate on the likelihood that the jury would ignore that

evidence. *See State v. Brown,* 341 N.W.2d at 15.

I also believe the quality of this policeman's testimony was different from and potentially more prejudicial to defendant than that of the other witnesses. The testimony of small children might be questioned by the jury because of their immaturity, infirm memory, and the potential that they could be influenced by adults in what they might say. The hearsay testimony given by psychiatrists about defendant's version would also be subject to infirmities. The jury could find from the evidence in this case that when he was examined by psychiatrists defendant was suffering from a neurotic condition, unable to remember certain aspects of the experience, and had lost his ability to evaluate reality appropriately. The testimony of this police officer, in contrast, might well have been given great weight by the jury. Jurors might have considered this to be an official version of what occurred, based on a report given by a child while the details were fresh in her mind. *Id.* at 15–16.

We have often said that the erroneous admission of hearsay evidence is presumed to be prejudicial unless the contrary is affirmatively established. *See id.* at 15; *State v. Galvan,* 297 N.W.2d 344, 348 (Iowa 1980); *State v. Horn,* 282 N.W.2d 717, 724 (Iowa 1979). When we have found such an error harmless, it has been because the evidence was clearly not prejudicial, for instance when there was a multiplicity of evidence substantially the same as that which had erroneously been admitted. *See, e.g., State v. Webb,* 309 N.W.2d 404, 411 (Iowa 1981); *State v. Johnson,* 272 N.W.2d 480, 482–83 (Iowa 1978). We have been unwilling to speculate about how important a jury thought the evidence was when it was of a different quality than that properly admitted.

I would grant defendant's request for a new trial on the ground that the admission of this inadmissible hearsay testimony deprived defendant of his right to a fair trial.