STATE of Iowa, Appellee,

v.

Bruce Burdette FARRIS, Appellant.

No. 83–1276.

Supreme Court of Iowa.

Dec. 19, 1984.

Charles L. Harrington, Appellate Defender, and Patrick R. Grady, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Sherie Barnett, Asst. Atty. Gen., and Denver D. Dillard, Co. Atty., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, CARTER, and WOLLE, JJ.

UHLENHOPP, Justice.

This appeal involves four issues which defendant Bruce Burdette Farris raises in his appeal from three convictions of first-degree murder.

Viewing the evidence in the light most favorable to the guilty verdicts, the jury could find the facts as follows. Jacalyn May lived in an apartment with her two small sons. Previously she and Farris had a romantic relationship, but more recently they had experienced difficulties and he had been living with another woman. Part of the problem was May's accusation that Farris had taken $200 from her apartment. Farris had threatened her several times.

On the evening of November 15, 1982, Farris and Michael Rohn were at an apartment with Louise Franks and Rose Glandon, who were the then girl friends of Farris and Rohn respectively. Farris and Rohn were drinking. They left the apartment and went to May's apartment, ostensibly for Farris to speak with May about her accusation that he had taken her money. At that apartment Farris told May he still loved her and the two went upstairs and engaged in sexual intercourse.

Farris and May then had an argument, Farris began choking May on the bed, and the two rolled off onto the floor. Rohn testified that he entered the room and, at Farris' request, pulled May off of Farris; that Farris asked Rohn to slash May's throat but Rohn refused; and that Farris stabbed May three times with a knife. Farris and Rohn fled to Franks' apartment. Farris, Rohn, Franks, and Glandon then went to Glandon's apartment, where Farris and Rohn attempted to boil blood off of the knife.

The quartet next drove to a point near the May apartment. Farris reentered the

apartment, found May still alive, and killed her and her two children by multiple stabbings. He returned to the car, the four went to Franks' apartment, Farris put the knife and a gun in a garbage bag and departed with a shovel, and Franks washed the gymnasium shoes Farris had been wearing.

The three May bodies were discovered on November 18, 1982.

The county attorney subsequently charged Farris with first-degree murder of the three Mays, and a jury found him guilty as charged. Following imposition of sentence, Farris appealed. In this court he argues four propositions.

I. Farris first contends that the district court erred in overruling his motion to suppress the introduction of his gymnasium shoes into evidence. The shoe soles were similar to shoe marks on the floor in the May apartment, and they were introduced to show that similarity.

■ After the three bodies were discovered, an officer went to Farris and asked him to accompany the officer to the police station. Farris did so. Subsequently at the station an officer asked Farris for his shoes, and Farris gave them to him. Prior to trial Farris moved to suppress the shoes on the ground that the officer obtained them by an unconstitutional search and seizure. We review this assigned error de novo. *State v. Schrier*, 283 N.W.2d 338, 341–42 (Iowa 1979).

The State asserts that no unconstitutional search and seizure occurred, and it also argues that Farris sustained no prejudice from the introduction of the shoes into evidence. After examining the record we are unable to see how Farris could possibly have been harmed by the introduction of the shoes. Farris testified at length at the trial and placed himself in the May apartment on the very evening of the homicides, as did other witnesses. Indeed, Farris' presence in the apartment that evening was not a contested issue. The shoes added nothing to what Farris admitted and the other witnesses related. The contest in the case involved the question whether Farris or Rohn slew the three Mays, not whether Farris was in the apartment.

Assuming without deciding that the district court erred in holding no unconstitutional search and seizure occurred, the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, *reh. denied*, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967); *State v. Leonard*, 243 N.W.2d 887 (Iowa 1976).

■ II. Farris next argues that during interrogation of him by law officers he requested an attorney but his request was not honored and another officer later interrogated him about his psychological history. He contends his constitutional rights were violated under such decisions as *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, *reh. denied*, 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981), and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, *reh. denied*, 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966).

Here again we review de novo, *State v. Cullison*, 227 N.W.2d 121 (Iowa 1975), although we accord "considerable deference" to the district court's findings on credibility. *State v. Hatter*, 342 N.W.2d 851, 854 (Iowa 1983). Farris and Rohn testified that Farris asked for an attorney during his interrogation. Two officers, detectives Hansel and Fuller, testified that Farris did not ask for an attorney. The district court saw and heard these witnesses and found the fact to be as the officers testified. After examining the testimony of the four individuals in question, we agree with the finding of the district court.

■ III. Farris contends that the trial court erred in overruling his hearsay objection to questions of State's witness Bonnie Edwards about statements of Jacalyn May that Farris had taken her money and threatened her and that she was afraid of him. The objection should have been sustained, but again the question is one of prejudice.

We stated in *State v. Johnson,* 272 N.W.2d 480, 482 (Iowa 1978) (citations omitted):

> Error in the admission of hearsay is presumed to be prejudicial unless the contrary is affirmatively established. Although not specifically in the hearsay context, we have stated that prejudice will not be found where substantially the same evidence is in the record without objection.

To the same effect see *State v. Nims,* 357 N.W.2d 608 (Iowa 1984); *State v. Webb,* 309 N.W.2d 404 (Iowa 1981); and *State v. Jurgenson,* 225 N.W.2d 310 (Iowa 1975).

This record contains substantial other evidence of the hearsay matters in the Edwards testimony. Prejudice does not appear.

IV. Finally, Farris asserts that he did not receive competent assistance from counsel in the trial court. We are unable to pass on this question by reason of an insufficient record. We preserve this issue for a postconviction proceeding if Farris wishes to pursue it.

AFFIRMED.