**STATE of Iowa, Appellee,**

v.

**Reginald Henry SALLIS, Appellant.**

No. 96–1662.

Supreme Court of Iowa.

Jan. 21, 1998.

Linda Del Gallo, State Appellate Defender, and John M. Priester and Tricia A. Johnston, Assistant State Appellate Defenders, Chris Kragnes, Student Legal Intern, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Kim Griffith, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

Defendant, Reginald Henry Sallis, challenges his convictions for drug possession and eluding police on grounds that the State's case included evidence gathered from Sallis' application for appointed counsel and pretrial release interview. Although we question the desirability or necessity of relying on such proof in the ordinary case, we find no error warranting reversal here. We affirm.

I. A jury could have found the following facts. In March 1996, Waterloo police followed up on a tip from a confidential informant that Sallis possessed crack cocaine to sell. As a marked police vehicle attempted to pull him over, Sallis initiated a high speed chase. He traveled some distance over a gravel road before suddenly coming to a stop. A search produced two marijuana cigarettes from the car and $327 rolled up in Sallis' shirt pocket. No crack cocaine was found at the immediate scene. Officers, however, retraced the chase route and found, along the side of the road, a baggie of crack cocaine. Whereas other debris in the area was dew and dust covered, the clear bag containing the drugs was dry and clean, consistent with having just been thrown from a car.

The State charged Sallis with possession of a controlled substance—cocaine base—with intent to deliver, in violation of Iowa Code section 124.401(1)(c) (1995), enhanced as a second offense under section 124.411; failure to affix a drug stamp, in violation of section 453B.12; possession of marijuana, in violation of section 124.401(3); and eluding or attempting to elude a marked law enforcement vehicle, in violation of section 321.279.

Routine pretrial matters prompt the two issues on appeal. Following his arrest Sallis applied for appointment of counsel and filled out the required financial statement, indicating he had no monthly income and no cash assets. At trial the application was published to the jury, over Sallis' objection, in an effort by the State to show that cash possessed by Sallis at the time of arrest came from the sale of drugs. Second, during an interview with pretrial release personnel, Sallis reported that from 1991 to early 1996 he had not resided in the county.[1] This information, again received over Sallis' objection, was recounted at trial by a corrections official to show there was no ongoing animosity between defendant and local police. The State used the evidence to rebut Sallis' defense that an officer "planted" the cocaine along the side of the road.

A jury returned guilty verdicts on the crimes charged. This appeal by Sallis followed.

■ II. Sallis first argues that allowing into evidence his application for appointment of counsel prejudiced him in the eyes of the jury. *See* Iowa R. Evid. 403. On appellate review of such an evidentiary ruling we grant the district court wide latitude regarding admissibility and will disturb the court's ruling only upon finding an abuse of discretion. *State v. Buller,* 517 N.W.2d 711, 712 (Iowa

---

1. This is so because he was serving time on a 1991 conviction and then engaged in a work release program.

1994). We have cautioned, however, that established rules of evidence "cannot be ignored under the guise of trial court discretion." *Id.*

■ As a threshold matter, the State urges that this issue is not preserved. At trial Sallis complained that the application for counsel, which showed he had no income or cash assets, was irrelevant and did not necessarily reflect his financial circumstances prior to the arrest. *See* Iowa Rs. Evid. 401, 402. The court overruled the objection. Although Sallis made the objection on general relevancy grounds, he has preserved error on his challenge to the document's probative value. "An objection to evidence on the grounds that it is irrelevant and immaterial is 'sufficient to raise the issue of the probative value of this evidence in relation to the purpose for which it was offered.'" *State v. Slayton,* 417 N.W.2d 432, 436 (Iowa 1987) (quoting *State v. Fuhrmann,* 257 N.W.2d 619, 625 (Iowa 1977)). Thus we turn to the merits of Sallis' argument.

■ Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 401; *accord State v. Mitchell,* 568 N.W.2d 493, 498 (Iowa 1997). Sallis' statement on the signed application that he had no monthly income and possessed "zero" cash assets makes "more probable" the State's theory that the $327 found on him was gained from illegal activity.

The pivotal question is whether the evidence should have been excluded on grounds of prejudice. *See* Iowa R. Evid. 403. Sallis asserts that any evidence showing a defendant is represented by appointed counsel is by its very nature prejudicial. Such a conclusion might be drawn from *State v. Roghair,* 353 N.W.2d 433, 435 (Iowa App.1984), where the court of appeals questioned the relevancy of an affidavit of indigency and agreed with the defendant that prejudice would naturally flow from the jury's knowledge that he relied on public funds for his defense. The State, on the other hand, suggests that proof of indigency raises no inherent prejudice if offered to prove an element of the offense charged. It relies on *State v. Kane,* 492 N.W.2d 209, 210 (Iowa App.1992), where the court of appeals distinguished *Roghair* and held that proof of the defendant's financial condition was a factor "tending to show motive [for theft] and consequent guilt." It appears from the *Kane* opinion, however, that the State's proof was not taken from an affidavit of indigency. *See id.*

■ On balance we are unwilling to adopt the bright line rule Sallis seeks. In the proper case a defendant's affidavit of financial condition might prove crucial to establishing the elements of the offense charged. That is not the case here, as it seems that proof of drug dealing might have been suggested by less attenuated means than using Sallis' application for counsel against him. Indeed, cautious prosecutors will refrain from abusing the strategy lest it prejudicially impact defendants' exercise of their Sixth Amendment right to counsel. Nevertheless, the court here was not faced with evidence offered to discredit the defendant as indigent and, therefore, unworthy of belief. The State's proof was arguably more probative than prejudicial and the district court did not abuse its discretion in so ruling.

III. In *Pennsylvania v. Muniz,* 496 U.S. 582, 589, 110 S.Ct. 2638, 2643, 110 L.Ed.2d 528, 543–44 (1990), the United States Supreme Court explained that the privilege against self-incrimination

> protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature. [I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information. Only then is a person compelled to be a "witness" against himself.

(Citations and quoted authority omitted.) Sallis argues that the pretrial release information concerning his past residence was "testimonial" because it required disclosure of information and, therefore, should not have been admitted at trial. The State counters that *Muniz* recognized a "routine booking question" exception, which exempts from customary *Miranda* warnings those ques-

tions securing biographical data essential to booking and other pretrial functions. *Muniz,* 496 U.S. at 601, 110 S.Ct. at 2650, 110 L.Ed.2d at 552; *Van Hoff v. State,* 447 N.W.2d 665, 672 (Iowa App.1989) (finding custodial interrogation does not include basic identification questioning); *see United States v. Horton,* 873 F.2d 180, 181 n. 2 (8th Cir. 1989) (listing cases recognizing routine booking exception). Thus, the State urges that Sallis' statement that he recently resided outside the county was not protected under *Miranda.*

 It is the rule that questions "normally attendant to arrest and custody" do not constitute interrogation. *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 308 (1979). The Eighth Circuit has explained the rule this way:

> A request for routine information necessary for basic identification purposes is not interrogation under *Miranda,* even if the information turns out to be incriminating. Only if the government agent should reasonably be aware that the information sought, while merely for basic identification purposes in the usual case, is directly relevant to the substantive offense charged, will the question be subject to scrutiny.

*United States v. Brown,* 101 F.3d 1272, 1274 (8th Cir.1996) (quoting *United States v. McLaughlin,* 777 F.2d 388, 391–92 (8th Cir. 1985)).

We conclude that the routine biographical statements made by Sallis during his pretrial release interview were not prompted by any sort of "interrogation." The information was requested of Sallis for administrative purposes unrelated to criminal investigation; that is, Sallis' statement about his former address was not the product of "compulsion above and beyond that inherent in custody itself." *Innis,* 446 U.S. at 300, 100 S.Ct. at 1689, 64 L.Ed.2d at 307; *cf. Bradley v. State,* 559 A.2d 1234, 1245 (Del.1989) (finding *Miranda* warnings should have been given during parole violation hearing where pre-release services director "realized that the questions he asked [defendant] might elicit an incriminating response").

We are, however, less than enthusiastic about the State's tactic of restyling benign statements given during a standard pretrial release interview into inculpatory trial evidence. The potential for chilling defendants' candid responses seems to us very great were the State's practice of turning their answers against them routine. Here, however, Sallis' statement was offered in rebuttal to his implicit defense that he was framed by police who held a grudge against him. By his defense strategy he opened the door to the State's proof. The court's decision to admit it furnishes no ground for reversal.

**AFFIRMED.**