STATE of Iowa, Appellee,

v.

Michael Eugene WIXOM, Appellant.

No. 97–2042.

Court of Appeals of Iowa.

April 30, 1999.

Linda Del Gallo, State Appellate Defender, and Martha J. Lucey, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, Michael Short, County Attorney, and Gordon Liles, Assistant County Attorney, for appellee.

Considered by SACKETT, C.J., HUITINK, STREIT, VOGEL, and MAHAN, JJ. ZIMMER, J., takes no part.

STREIT, J.

Michael Wixom appeals his convictions and sentences, following a jury trial, for three drug-related offenses. Because the State impermissibly impeached one of its own witnesses in order to offer otherwise inadmissible hearsay into evidence, we reverse.

### I. Background Facts & Proceedings.

On October 8, 1996, Wixom's residence was searched pursuant to a warrant. The police found drugs and drug paraphernalia.

1. The prosecutor questioned police officer Harry Jones as follows:

> Q: Did Gloria Genck implicate more than Michael Jeffrey in this interview,—
> A: Yes, she did.
> Q:—criminal activity? What other person or persons did she implicate in that interview?
> A: Michael Wixom
> The prosecutor similarly questioned officer Lee Barnes:
> Q: During the course of the that interview, did Gloria Genck implicate any person in criminal activity?
> *** (objection made by defense, overruled by the court)
> A: Yes.
> Q: What person or persons did she implicate in criminal activity to you and Deputy Jones on October 8th of 1996?
> *** (objection made and overruled)

Wixom was charged with possession with intent to deliver cocaine, possession with intent to deliver marijuana, and possession with intent to deliver or manufacture amphetamine.

At trial, Wixom's girlfriend, Gloria Genck, was called as a witness for the State. Genck was at Wixom's home during the search and was later interviewed at the county jail, although the interview was not reported or taped. During her trial testimony, Genck denied making any statements incriminating Wixom. Genck had made similar denials at an earlier motion to suppress. The State attempted to impeach Genck by questioning officers about the subject matter of their discussions with her.[1] According to the officers, Genck made statements implicating Wixom in the manufacture and sale of illegal drugs. Wixom objected, arguing the State's true purpose in calling the officers was to offer inadmissible hearsay into evidence. The trial court overruled Wixom's objection. The jury returned guilty verdicts on all counts. Wixom appeals.

### II. Hearsay Violation.

Wixom contends the trial court erred by admitting inadmissible hearsay testimony under the guise of impeachment in violation of *State v. Turecek*, 456 N.W.2d 219 (Iowa 1990).[2]

1. A: Michael Wixom, Michael Jeffrey, and a John Decker.

2. In *Turecek*, the Iowa Supreme Court examined the State's purpose for attempting to admit otherwise inadmissible hearsay through impeachment. The court stated:

> The right given to the State to impeach its own witnesses under Iowa Rule of Evidence 607 and our decision in *State v. Trost*, 244 N.W.2d 556, 559–60 (Iowa 1976), is to be used as a shield and not as a sword. The State is not entitled under rule 607 to place a witness on the stand who is expected to give unfavorable testimony and then, in the guise of impeachment, offer evidence which is otherwise inadmissible. To permit such bootstrapping frustrates the intended application of the exclusionary rules which rendered such evidence inadmissible on the State's case in chief.

*Turecek*, 456 N.W.2d at 225.

**A. Standard of Review.** We review hearsay rulings for errors at law. *See State v. Ross*, 573 N.W.2d 906, 910 (Iowa 1998) ("In the case of hearsay rulings, our review is for correction of errors at law because admission of hearsay evidence is prejudicial to the non-offering party unless the contrary is shown."); *see also State v. Hallum*, 585 N.W.2d 249, 254 (Iowa 1998). Although our supreme court used an abuse of discretion standard in *State v. Rojas*, 524 N.W.2d 659 (Iowa 1994), to review a potential *Turecek* violation, the court's subsequent decision in *Ross* made clear all hearsay violations should be reviewed for errors at law. For this reason, we conclude all *Turecek* hearsay violations are reviewed for errors at law, and do so here.

**B. Harmless Error.** The question remains whether a harmless error analysis is available when reviewing a *Turecek* violation. We find automatic reversal for a *Turecek* violation would be imprudent as the degree of potential prejudice can vary greatly from case to case. Rather, we find a harmless error analysis appropriate review for *Turecek* violations. *See State v. Sowder*, 394 N.W.2d 368, 372–73 (Iowa 1986) (conducting a harmless error analysis before concluding that there had been reversible error for a hearsay violation).

In conducting a harmless error analysis, we first assess whether the error was of constitutional dimension. If it was, the State must show beyond a reasonable doubt the error did not result in prejudice. *State v. Traywick*, 468 N.W.2d 452, 455 (Iowa 1991); *see also State v. Damme*, 522 N.W.2d 321, 326 (Iowa App.1994) ("[w]here there has been a violation of defendant's fundamental rights under the United States Constitution, we can hold error harmless only when we can declare a belief it was harmless beyond a reasonable doubt.").

If the error is not of constitutional dimension, affecting a fundamental right, we review the inadmissible statements weighed against the other evidence properly admitted to determine if admission of the statements impacted the jury's verdict. *See Rice*, 543 N.W.2d at 887 ("Admission of hearsay alone is not a valid ground for reversal in cases where the State upholds its burden of proving the challenged evidence did not impact upon the jury's verdict of guilty."); *see also State v. Barrett*, 445 N.W.2d 749, 754 (Iowa 1989); *State v. Nims*, 357 N.W.2d 608, 609 (Iowa 1984). The test for harmless error in this circumstance is "whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice." *State v. Williams*, 574 N.W.2d 293, 298 (Iowa 1998). To warrant reversal, an error must have prejudiced the defendant. *Id.* When evidence is merely cumulative, it cannot be said to injuriously affect the complaining party's rights. *Id.*

Even when the error is not of constitutional magnitude, however, we must be mindful of the defendant's right to a fair trial and just application of our rules.

**C. Harmless Error Analysis of Turecek *Violation in This Case.*** During the course of the trial, the court allowed officers to characterize Genck's hearsay statements.[3] The State called a police officer who testified Ms. Genck, another trial

---

3. The trial court initially ruled the testimony was not admissible. The court stated: "... what I think the State is trying to do is get before the jury the substance of those statements.... [T]he State is not entitled under Rule 607 to place a witness on the stand who is expected to give unfavorable testimony and then, in the guise of impeachment, offer evidence which is otherwise inadmissible.... [S]o it's going to be the court's ruling that the substance of those statements will not be allowed inasmuch as they are inadmissible hearsay."

However, the court later allowed the State, over proper objection, to have officers characterize Genck's testimony implicating the defendant with drug dealing activities.

A characterization of hearsay testimony which identifies the general content of the statements is still hearsay if it conveys the

witness, previously told him things that "implicated" the defendant in "criminal activity." The officer was also allowed to characterize the subject matter of his discussions with Genck as being about "a methamphetamine recipe," "the sales of drugs," "the substances starter fluid and water," and "a recipe for the cooking of amphetamine or methamphetamine." Although counsel did not object to this as a violation of the bad-man rule,[4] the testimony was clearly offered to prove the defendant's guilt. The testimony was not impeachment, but plainly hearsay. It was error for the trial court to allow the State to impeach its own witness when it knew, prior to calling Genck, she was denying she made previous statements. *See Turecek*, 456 N.W.2d at 225.

The State contends it was impeaching Genck's trial testimony denying any such statements,[5] and that evidence of Wixom's guilt was so strong, even if the testimony was inadmissable, admission was harmless error. It is puzzling the State's position that such evidence had value for impeachment purposes, although not allowed under *Turecek*, but to conclude it had no probative value when used to show it was harmless. *See State v. Peterson*, 219 N.W.2d 665, 671 (Iowa 1974). If this evidence was so small, so petty, so inconsequential, why did the trial court struggle for over eighty pages of transcript discussing and determining its admissibility? The answer is

simple—the testimony was damaging to Wixom's case.

The defendant was charged with possession *with the intent* to deliver cocaine, marijuana, and possession *with the intent* to manufacture or deliver methamphetamine. The evidence someone "implicated" the defendant in "criminal activity" made the case stronger. The evidence someone told the officer the defendant used certain recipes to cook the drugs demonstrates the intent of the defendant while he possessed the drugs. The evidence the conversation dealt with the sale of drugs adds strong direct evidence where there was none. Mere possession of the drugs and drug paraphernalia was circumstantial evidence of the defendant's intent. The paramour's statement of Wixom's recipe and such culinary endeavors is wholly more damning than mere possession.

In *Nims*, like in *Williams*,[6] the Supreme Court concluded error in admitting narrative testimony was harmless because it was cumulative. Justice Wolle, noted the following in his dissent:

> We cannot know exactly what evidence made the greatest impression on the minds of the jurors, but we do know from the jury instructions what the prosecution had to prove beyond a reasonable doubt to convict defendant of kidnaping in the first degree. This was a specific intent offense. To obtain a conviction the prosecution was required to prove beyond a reasonable doubt that

---

information trying to be proved. It is no less of a hearsay statement for a witness to say someone "implicated" the defendant in criminal activity in an out of court statement than to repeat the statements made describing the criminal activity.

4. Defense counsel did not object to this evidence as being in violation of *Iowa Rule of Evidence 404* (character evidence not admissible).

5. The prosecutor questioned police officer Harry Jones as follows:
   Q: Did Gloria Genck implicate more than Michael Jeffrey in this interview,—
   A: Yes, she did.

Q:—criminal activity? What other person or persons did she implicate in that interview?
   A: Michael Wixom
   The prosecutor similarly questioned officer Lee Barnes:
   Q: During the course of the that interview, did Gloria Genck implicate any person in criminal activity?
   *** (objection made by defense, overruled by the court)
   A: Yes.

6. *State v. Williams*, 574 N.W.2d 293, 298 (Iowa 1998).

defendant not only confined the victim or moved her from place to place but also accompanied that act with the intent to subject the victim to sexual abuse....

With specific intent the jugular issue, and intent provable only from facts showing what defendant had done, the officer's hearsay narrative testimony about what the victim told him touched on the key disputed question in the case.... I cannot conclude that the hearsay testimony was not relevant and important on the core issue of specific intent.

Finally, I view the officer's hearsay testimony as fundamentally different from and not merely cumulative of other evidence presented in this case.... None of that evidence, however, was the equivalent of the narrative testimony given by the police officer. The officer's hearsay testimony included several details pertinent to the issue of specific intent which were not mentioned in the testimony of any other witness.... Those details would be consistent with an intent.... The jury may have drawn such an inference from that testimony. I certainly am unwilling to speculate on the likelihood that the jury would ignore that ...

We have often said that the erroneous admission of hearsay evidence is presumed to be prejudicial unless the contrary is affirmatively established.... When we have found such an error harmless, it has been because the evidence was clearly not prejudicial, for instance when there was a multiplicity of evidence substantially the same as that which had erroneously been admitted.... We have been unwilling to speculate about how important a jury thought the evidence was when it was of a different quality than that properly admitted.

*State v. Nims,* 357 N.W.2d 608, 613 (Iowa 1984) (Wolle, J. *dissenting*).

Wixom's case is not like *Nims* or *Williams.* The evidence admitted was not cumulative. It was different from all other evidence presented in that it supplied the jury with information about activities pointing to Wixom's intent. Through repetition of out-of-court statements of an eye witness, in effect, the testimony said the defendant did the crimes charged in the trial.

In its defense, the State cites all the other proof the jury could have used to find Wixom guilty. There was evidence Wixom was operating an illegal drug operation in his home. Among the items seized in Wixom's home were drugs (marijuana, cocaine and amphetamine), drug paraphernalia, and chemicals used in the manufacture of methamphetamine. Police also found a police scanner and measuring scales. The hearsay testimony at issue in this case was unique in that it explained to the jury how Wixom utilized the items seized from his home.

The fact other evidence existed of an illegal drug operation does not mean the wrongfully admitted evidence was not prejudicial. Prejudice analysis is designed to avoid reversal for obviously small or trivial matters. For trifles. The testimony of Wixom's girlfriend was not a trifle. To use the prejudice analysis in cases such as this one would eviscerate our rules of evidence. "Our duty is to insist on procedure and observance of rules best adapted to provide ... what the law promises, a fair and impartial trial." *State v. Leuty,* 73 N.W.2d 64, 69, 247 Iowa 251 (1955). We should not step into the jury box, weigh the evidence, and then declare such errors caused no prejudice. To do so usurps an exclusive duty of the jury.

The effect of the admission of the hearsay testimony was a denial of Wixom's right to a fair trial. We reverse and grant defendant a new trial.

### III. Evidence of Indigence.

During his testimony at trial, Wixom denied being a drug dealer. On cross-

examination, the State attempted to impeach Wixom's credibility by asking him about earnings and assets that he did not include on his application for court-appointed counsel. Wixom asserts the court abused its discretion is allowing this evidence. He contends the evidence was irrelevant, and even if relevant, was more prejudicial than probative.

■ When reviewing a trial court's evidentiary ruling, we grant the court wide latitude regarding admissibility and will disturb the court's ruling only upon finding an abuse of discretion. *See State v. Sallis*, 574 N.W.2d 15, 16 (Iowa 1998); *State v. Buller*, 517 N.W.2d 711, 712 (Iowa 1994).

■ Evidence a defendant is indigent and represented by court-appointed counsel may be more prejudicial than probative if used merely to portray the defendant as an indigent. *See State v. Roghair*, 353 N.W.2d 433, 435 (Iowa App.1984). However, where such evidence is arguably relevant to an element of the charged offense, it may be properly admitted. *See Sallis*, 574 N.W.2d at 17. Here, the State was not attempting to attack Wixom's credibility by showing he was indigent. Rather, the State questioned Wixom's credibility by asking him about his sources of income and the absence of certain assets on his financial affidavit. This evidence was properly admitted to cast doubt on Wixom's assertion that he was not a drug dealer. We find no abuse of discretion by the trial court.

### IV. Ineffective Assistance of Counsel.

Wixom claims his trial counsel was ineffective in failing to apply for an extension of time to file a motion to suppress.

■ To prevail on an ineffective assistance of counsel claim the defendant must show by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *State v. Pearson*, 547 N.W.2d 236, 240 (Iowa App.1996). Our standard of review is de novo. *See State v. Bugely*, 562 N.W.2d 173, 178 (Iowa 1997).

■ Wixom's counsel filed an untimely motion to suppress without seeking an extension of time for good cause. However, there was no breach of duty, and therefore no ineffective assistance, because the suppression motion was denied on its merits. *See State v. McCurry*, 544 N.W.2d 444, 448 (Iowa 1996) (even though counsel filed an untimely evidentiary motion, there was no breach of professional duty where counsel nonetheless secured a ruling on the merits).

Although Wixom raised this issue primarily in the context of ineffective assistance, he also contends the court erred in admitting the evidence because it was gathered pursuant to a warrant issued without probable cause. We do not believe this was properly raised as a separate issue for our review; however, after review of the arguments, we find the court did not err in denying Wixom's motion to suppress.

**REVERSED.**

All judges concur except SACKETT, C.J., and VOGEL, J. who dissent.

VOGEL, J. (dissenting).

I respectfully dissent. I agree that the State's primary purpose in questioning the officers who interviewed Genck was to offer her statements for the truth of the matter asserted. However, while I would find that a *Turecek* hearsay violation occurred, I would not find that the error was prejudicial.

*Prejudice analysis.* In the case before us, we review the inadmissible statements weighed against the other evidence properly admitted to determine if admission of the statements impacted the jury's verdict. *See Rice*, 543 N.W.2d at 887 ("Admission of hearsay alone is not a valid ground for reversal in cases where the State upholds its burden of proving the challenged evidence did not impact upon the jury's ver-

dict of guilty."); *see also State v. Barrett,* 445 N.W.2d 749, 754 (Iowa 1989); *State v. Nims,* 357 N.W.2d 608, 609 (Iowa 1984).

The majority finds that there was no evidence of Wixom's intent to deliver. I disagree. In Wixom's house, police found marijuana hidden in four different places, three rock or salt forms of cocaine and amphetamine, and amphetamine in powder form. Wixom denied knowledge or ownership of any of the drugs seized save for a small amount of the marijuana. He admitted, however, to owning most of the other items seized. Among them were common drug-dealing paraphernalia such as pipes, baggies, razor blades, tweezers, scissors, eye droppers, rolling papers, and soldering ring clamps; several of which were found together in a tupperware container hidden above the ceiling tiles. Wixom had no explanation as to why the items were in the ceiling. He also had no explanation as to why several baggies that police found in the trash had their corners knotted or cut off, which is a typical method of how drugs are packaged for distribution. Police also seized several products which are commonly used in the manufacture of methamphetamine, including paint thinner, acetone, starter fluid, drainer opener, numerous inhalers, and ether. While possession of any these items can be explained away based on their appropriate use, Wixom possessed an unusual quantity of certain items which contradicted normal household use. Finally, police found a police scanner, a list of frequencies for police scanners which Wixom admitted to making, measuring scales, and scale weights. A jury could conclude that the use of measuring devices infers sale and distribution as opposed to mere personal use.

There was ample evidence that Wixom was operating an illegal drug operation. I would affirm because the State carried its burden of showing that the hearsay testimony was not prejudicial as weighed against the substantial evidence of Wixom's intent to manufacture and deliver illegal drugs.

SACKETT, C.J., joins this dissent.