STATE of Iowa, Appellee,

v.

Arthur Merlin RICE, Appellant.

No. 94–1451.

Supreme Court of Iowa.

Feb. 14, 1996.

Linda Del Gallo, State Appellate Defender, and John F. Fatino, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, William E. Davis, County Attorney, and Donald Frank, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

Appellant, Arthur Merlin Rice, appeals convictions of first-degree robbery and first-degree theft. We affirm.

## I. Factual and Procedural Background

Shortly after the store opened on November 5, 1993, a man entered John R. Benson Jewelers and asked to see some ladies' anniversary rings. Nancy Skulte, a saleswoman, showed him several ladies rings as well as some men's rings, one with a one-carat diamond. Skulte became apprehensive about waiting on the man due to his suspicious demeanor, so she signaled to Pamela Buckles, a coworker, to assist. Buckles stood nearby and pretended to reorganize a tray of ring mountings. Another employee, Dianna Vinger, left the area to use the restroom, and then returned with Dennis Kinner, a jewelry technician.

The customer then became agitated and began haggling over prices with Kinner. He pulled a gun from his pocket and pointed it at Skulte and Buckles, saying, "This is a robbery, this is what's going down. Don't move." The robber left the store with the two rings he had been holding and an entire tray of mountings. The jewelry taken had an estimated value of $15,000.

When police arrived at the store, the employees all described the robber as an African–American male in his 30s, slightly over six feet tall, weighing approximately 200 pounds, wearing a grey and black plaid vest and black jeans. Police also collected the video tape from the store security camera. Following the in-store investigation, Davenport police took Skulte and Buckles to the station to conduct individual photograph identifications. Both independently selected the defendant's photo from the nearly 600 mug shots of men fitting the general description of the perpetrator. Police then placed the defendant's photo among four others and conducted a photographic lineup with other store employees. Kinner identified the defendant as the robber, and Vinger chose a photograph of another man. Kinner later testified he thought the perpetrator had a mustache, whereas Buckles and Skulte remembered the robber as being clean shaven.

About a month later, on December 4, 1993, the defendant and a companion, Kevin Watson, entered McGivern's Fine Jewelry in Rock Island and tried to sell several ring mountings to the owner, McGivern. Upon examining the rings, McGivern noticed they were stamped "JRB" inside, the mark used by John R. Benson Jewelers. McGivern refused to purchase them. He later told Benson and the police about the incident.

On December 13, 1993, a warrant issued for the defendant's arrest. He was arrested in Rock Island on April 4, 1994 and transported to Iowa on April 6, 1994. The defendant was charged with one count of first-degree robbery in violation of Iowa Code sections 711.1 and 711.2 (1993), and one count of first-degree theft under Iowa Code sections 714.1(1) and 714.2(1) (1993). The State later amended the trial information to provide for the firearm sentencing enhancement allegations pursuant to Iowa Code section 902.7 (1993). The defendant pled not guilty to all charges and on July 28, 1994, following a trial by jury, was found guilty on both counts and subject to the firearm sentencing enhancement. On August 25, 1994, he was sentenced to consecutive terms of twenty-five years on the robbery charge and ten years on the theft charge. He appeals on the basis the district court erred in allowing a police officer to testify directly from his police report in contravention of Iowa Rule of Evidence 803(8)(B), and on an ineffective assistance of counsel claim. We affirm.

## II. The Police Report

The defendant claims he is entitled to a new trial because the district court admitted testimony of Davenport Police Detective Donald Huss over a hearsay objection by defense counsel. The testimony at issue concerned a report prepared by Detective Huss following Skulte's identification of the defendant from the photographs in the mug shot books. The exchange transpired as follows:

Q. Is this an accurate copy of your report concerning your display of the photographic lineup to Nancy Skulte? A. Yes, it is.

Q. Okay, read from what she told you when she picked out the photograph of the defendant.

MR. MACEK [defense counsel]: Objection, that clearly calls for hearsay, your Honor.

THE COURT: The objection's overruled.

A. In looking through the books, Skulte examined the photos of all three books and picked out the photo of Arthur Rice and stated that this was the subject who she had waited on at Benson Jewelers.

Later during the course of the trial, Skulte herself testified and identified the defendant in the courtroom as being the perpetrator. She also testified about her identification of the defendant in the photo lineup:

Q. And do you have any recollection of about how much time you spent going through the books? A. I would say 15 to 20 minutes.

Q. And before you started looking at the pictures, what did the detective tell you that you were to look for? A. He asked us if we could find a picture—a picture of the man that held us up.

Q. And did you look through all of the books? A. Yes, I did.

. . . .

Q. And did you come—you said you came up with a picture? A. That's correct.

Q. Just one photo? A. Yes.

Q. And did you indicate that to the detective? A. Yes.

. . . .

Q. Okay. After you picked out the one photo that you did pick out, what did you indicate about that photo to the detective? A. I said, this is the man.

■ Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Iowa R.Evid. 801(c). Hearsay is generally inadmissible unless it falls within one of the enumerated exceptions set forth in the rules. *Id.* at 802–03. The State argues that even if the statement was inadmissible hearsay, it does not follow that the defendant is entitled to a new trial, as no prejudice resulted to him based on the admission of the statement.

■ If hearsay is admitted, prejudice to the non-offering party is presumed unless the contrary is affirmatively established. *State v. McKettrick,* 480 N.W.2d 52, 60 (Iowa 1992); *State v. Horn,* 282 N.W.2d 717, 724 (Iowa 1979). Admission of hearsay alone is not a valid ground for reversal in cases where the State upholds its burden of proving the challenged evidence did not impact upon the jury's verdict of guilty. *State v. Barrett,* 445 N.W.2d 749, 754 (Iowa 1989); *State v. Nims,* 357 N.W.2d 608, 609 (Iowa 1984). Furthermore, prejudice is not established where substantially similar evidence has been admitted but not objected to. *McKettrick,* 480 N.W.2d at 60; *State v. Gilmore,* 259 N.W.2d 846, 858 (Iowa 1977). This is clearly such a case. On direct examination, Detective Huss testified without objection that Skulte had chosen the defendant's picture out of 600 mug shots. He made a similar statement during his redirect examination as well, also to no objection. Considering these statements conveyed virtually the same information as that he read from the record, it is hard to fathom how this testimony could have enhanced any evidence in the record. *See State v. Holmes,* 325 N.W.2d 114, 116 (Iowa 1982).

In addition to Huss' testimony, the State presented substantial evidence of defendant's guilt: The robbery took place in broad daylight in a well-lit jewelry store, and the em-

ployees present at the time were all able to identify the defendant from either the photo books or a five-person photo lineup. This evidence, coupled with the allegations the defendant tried to sell the ring mountings, certainly leads to the conclusion that admission of the statement was harmless. Because the admission of the testimony read from Detective Huss' report was not prejudicial to the defendant, we need not answer the question whether it was in fact inadmissible hearsay, or whether it fell within one of the statutory exceptions.

### III.   Ineffective Assistance of Counsel

Defendant argues three errors of defense counsel render his assistance ineffective and constitutionally deficient: (1) Counsel failed to cross-examine eyewitnesses concerning inconsistencies in their identification of the defendant; (2) counsel failed to object to the admission of a video tape of the robbery; and (3) counsel failed to inform defendant of the deadline for disclosure of the name of prospective witnesses.

■■■   Issues of ineffective assistance of counsel are generally reserved for postconviction relief proceedings; however, where an adequate basis for a decision is present in the record, they will be decided on direct appeal. *State v. Kellogg,* 542 N.W.2d 514, 516 (Iowa 1996); *State v. Ueding,* 400 N.W.2d 550, 553 (Iowa 1987); *State v. Hildebrant,* 405 N.W.2d 839, 840 (Iowa 1987). For Sixth Amendment claims, a reviewing court must perform "an independent evaluation of the relevant circumstances . . . equivalent to a de novo review." *Taylor v. State,* 352 N.W.2d 683, 684 (Iowa 1984). This court generally affords counsel a presumption his conduct fell within the broad range of professional competence, and in order to merit relief, the defendant must show that but for counsel's errors or omissions, there is a reasonable probability of a different outcome. *Strickland v. Washington,* 466 U.S. 668, 689–91, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674, 694–95 (1987); *Taylor,* 352 N.W.2d at 685.

■■■   The defendant in this case has not satisfied this burden. The defendant is not entitled to perfect representation, rather, only that which falls within the normal range

of competency. *Kellogg,* 542 N.W.2d at 516; *State v. Halstead,* 362 N.W.2d 504, 508 (Iowa 1985). Defense counsel's cross-examination of the eyewitnesses in this case was clearly competent as is evident from the record. Counsel did not breach any essential duty to the defendant by failing to pose specific cross-examination questions defendant would prefer him to ask. Defendant has also failed to show any reasonable probability the outcome of the trial would have been different had counsel conducted a more thorough cross-examination.

■■■   Defendant also alleges counsel's failure to object to the admission of a video tape of the robbery, therefore failing to preserve the issue of admissibility for our consideration on appeal, constituted ineffective assistance of counsel. Only in rare cases may the failure to preserve error deny a defendant effective assistance of counsel. *Halstead,* 362 N.W.2d at 508–09. In this case, defense counsel had no duty to object to admission of the video tape. There is little question whether a video tape of the crime in progress would have relevance to a criminal prosecution. The tape in this case establishes the time the robbery took place and the general description of the perpetrator as an African–American male of large build wearing a black and grey plaid vest. Because any motion to exclude this on relevance grounds would have been meritless, defense counsel had no duty to make such a motion. *State v. Ray,* 516 N.W.2d 863, 866 (Iowa 1994).

■■■   Defendant's final basis for his ineffective assistance of counsel claim, that his attorney failed to provide him with the deadline for providing a witness list, also must fail. The record indicates the defendant himself withheld the identity of Kevin Watson (his companion while attempting to sell the rings at McGivern's) from his attorney until the deadline had passed. For this reason the trial court denied defendant's motion for a continuance requested in order to investigate defendant's claim that Kevin Watson was the robber. In assessing claims of ineffective assistance of counsel, a defendant's conduct is examined as well as that of his attorney.

*Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695; *State v. Stewart,* 445 N.W.2d 418, 421 (Iowa App.1989); *see also State v. McGinnis,* 243 N.W.2d 583, 586–87 (Iowa 1976). Additionally, the defendant has failed to establish prejudice on this basis—it is not reasonably likely that calling Watson as a witness would have persuaded the jury to find the defendant not guilty. Defendant testified in his own defense and named Watson as the robber, thus providing the jury directly with the reason for his claimed innocence. The court did not abuse its discretion and committed no error in denying the motion for continuance.

IV. Conclusion

Because defendant has failed to show that any reversible error has occurred in his trial, the convictions are affirmed.

**AFFIRMED.**