STATE of Iowa, Appellee,

v.

Timothy McCURRY, Appellant.

No. 94–1747.

Supreme Court of Iowa.

Feb. 14, 1996.

Linda Del Gallo, State Appellate Defender, and John F. Fatino, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Richard Crowl, County Attorney, and Timothy O'Grady, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

Timothy McCurry appeals from judgments of conviction and sentences for first-degree burglary and third-degree sexual abuse. He raises two issues. First, McCurry contends the district court erred by allowing into evidence two FBI DNA reports linking him with the victim. In support of his contention, McCurry argues that these reports were not hearsay exceptions admissible under Iowa Rule of Evidence 803(8)(B) as public records. Second, McCurry contends his trial counsel was ineffective because he failed to move in a timely manner to suppress "unduly suggestive" results of two photo arrays.

We conclude there was no prejudicial error regarding the admission of the DNA reports. We also conclude McCurry failed to establish his ineffective assistance of counsel claim. We therefore affirm.

## I. *Background Facts.*

On August 29, 1993, the victim awoke to the sound of thunder. She then heard a noise at her back door. Upon investigating, she saw someone attempting to break into her residence. She yelled at the would-be intruder, and her yelling appeared to scare the individual off.

A short time later, the intruder returned and gained entry to the victim's residence. The intruder confronted and then raped the victim. Timothy McCurry was allegedly the intruder.

## II. *Background Proceedings.*

The State charged McCurry in a two-count trial information. Count I was for burglary in the first degree. *See* Iowa Code §§ 713.1, 713.3 (1993). Count II was for sexual abuse in the third degree. *See* Iowa Code §§ 709.1(1), 709.4(1).

McCurry pleaded not guilty and later filed a notice of alibi.

The case proceeded to a jury trial. The jury found McCurry guilty on both counts. At sentencing, the district court sentenced McCurry to an indeterminate term not to exceed twenty-five years on the first-degree burglary count and an indeterminate term not to exceed ten years on the third-degree sexual abuse count. The court ordered McCurry to serve the sentences consecutively.

We state additional facts in connection with the issues we discuss.

## III. *The DNA Reports.*

Following the rape, medical personnel recovered microscopic samples from the victim. Later, pursuant to a court order, medical personnel took microscopic samples from McCurry. Microscopic samples were also taken from another man who was a suspect in the rape.

The State sent these samples to the FBI for DNA (shorthand term for deoxyribonucleic acid) testing. *See State v. Brown,* 470 N.W.2d 30, 31 (Iowa 1991) (describing DNA and DNA "fingerprinting" process). The FBI furnished the State with two reports

regarding its analysis of the samples. One report concluded the DNA profile from material on the victim's vaginal swab matched the DNA profile from McCurry's blood sample. The report also indicated that

> [t]he probability of selecting an unrelated individual at random from the population having a DNA profile matching [McCurry's] is approximately 1 in 180 million in Caucasians, 1 in 150 million in Blacks and 1 in 60 million in Hispanics.

(The victim is Caucasian; McCurry is Black.)

John Mertens did the analysis and prepared the two DNA reports. He is an FBI analyst and DNA expert. Consistent with his first DNA report, Mertens testified that, in his opinion, there was a positive match between the DNA samples taken from McCurry and the samples taken from the victim.

Also consistent with the first DNA report, Mertens testified as follows:

> Q. Were you able to arrive at a frequency opinion for Mr. McCurry's samples based upon all four loci? A. Yes, sir, I was.
>
> Q. And what is your opinion? A. Based upon the DNA profiles that I have developed, the chances of going out into the population and selecting at random another individual that would have the same DNA profile as this is approximately one in 180 million in Caucasians, one in 150 million in Blacks and one in 60 million in Hispanics.

Thereafter the State offered the first DNA report which the court received into evidence over McCurry's hearsay objection.

Mertens' testimony also included the information contained in the second DNA report:

> Q. Now, what was the reason for making a comparison against another individual? A. I had received a court order dated August 9, 1994, wherein I was requested by the court to compare the DNA profiles that I developed in this particular case to DNA profiles that had been developed in another case which had been submitted to the FBI laboratory for examination to see whether or not that particular individual could be included or excluded as a possible contributor to the DNA profiles from this particular case.
>
> Q. Now, the other case was unrelated to [this] one? A. Yes, that's true.
>
> Q. And the comparison that you made was with a separate individual from Mr. McCurry? A. Yes, that's correct.
>
> Q. What were the results of that comparison? A. The results of DNA comparisons that I made between the questioned DNA in this particular case and the known samples from that other case was that these DNA profiles were not a match, and that other individual was excluded as a contributor to the DNA profiles in this case.

Following this testimony, the State offered the second DNA report which the court also received into evidence over McCurry's hearsay objection.

■ As he did in the district court, McCurry contends here that the reports were hearsay. More specifically, he asserts the admission of the reports violated Iowa Rule of Evidence 803(8)(B)(i), (iii), and (v).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Iowa R.Evid. 801(c). Generally, hearsay is inadmissible unless it falls within one of the listed exceptions in the rules. Iowa R.Evid. 802. The two DNA reports were hearsay.

Iowa Rule of Evidence 803(8) is the public records exception to the hearsay rule. It states in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (8) **Public Records and Reports.** (A) To the extent not otherwise provided in (B), records, reports, statements, or data compilations in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to a duty imposed by law and as to which there was a duty to report, or factual findings resulting

from an investigation made pursuant to authority granted by law.

Rule 803(8)(B) lists five kinds of evidence not admissible under the public records exception:

(B) The following are not within this exception to the hearsay rule: (i) *investigative reports by police and other law enforcement personnel;* (ii) investigative reports prepared by or for a government, a public office or an agency when offered by it in a case in which it is a party; (iii) *factual findings offered by the state or political subdivision in criminal cases;* (iv) factual findings resulting from special investigation of a particular complaint, case, or incident; (v) *any matter as to which the sources of information or other circumstances indicate lack of trustworthiness.*

(Emphasis added.) McCurry believes the district court should not have admitted the DNA reports because they (1) are investigative reports, (2) are prepared by law enforcement personnel, (3) contain factual findings offered by the State, and (4) are "inherently unreliable" evidence of alleged criminal conduct.

Apparently the reason investigative reports prepared by law enforcement personnel are not admissible hearsay is because such reports

may not be as reliable as some other forms of official records and that, therefore, availability of witnesses for cross-examination may be more appropriate than introduction of the evidence through records.

James A. Adams & Kasey W. Kincaid, 7 Iowa Practice: Evidence § 803.8, at 443–44 (West 1988).

Recently, we had occasion to interpret rule 803(8)(B)(i), (ii), and (iv). *See State v. Reitenbaugh,* 392 N.W.2d 486 (Iowa 1986). In *Reitenbaugh,* the State successfully entered an arrest warrant into evidence as a public record. The warrant contained statements of the defendant's probation officer that the defendant had failed to maintain contact and his whereabouts were unknown. The probation officer did not testify. In reversing the defendant's convictions, we held these statements

were the kind of investigative report and "factual findings" which subparts (B)(i), (B)(ii), and (B)(iv), make inadmissible. Those hearsay statements were made by a probation officer, a person who was plainly acting as a peace officer and allied in this instance with fellow peace officers. They were inadmissible as "investigative reports by … law enforcement personnel [pursuant to Iowa Rule of Evidence 803(8)(B)(i) ]."

The probation officer's statements were also made inadmissible by rule 803(8)(B)(ii), because they plainly were part of an investigative report prepared by the State for the purpose of having defendant arrested for violation of conditions of his pre-trial release. Furthermore, statements of the probation officer constituted factual findings resulting from the special investigation of a particular incident, defendant's failure to report, thereby making those hearsay statements inadmissible under rule 803(8)(B)(iv).

*Id.* at 489–90 (citation omitted).

In *Reitenbaugh,* we recognized that the three specific subpart B exceptions to the admissibility of public records and reports represent sound public policy. The public policy we referred to is that in criminal cases

the State ought not be allowed to introduce substantive evidence tending to prove commission of the charged offenses without calling as witnesses, subject to cross-examination, the persons who have specially investigated particular incidents and reported in writing on those investigations. The better policy is to require the prosecution to call its investigators as witnesses rather than allowing the State to satisfy its burden of proof with written reports bearing a certain facial authenticity which a jury might attribute to public records.

*Id.* at 490.

One crucial difference separates this case from *Reitenbaugh.* In *Reitenbaugh,* the probation officer who made the statements in the arrest warrant *did not testify.* The statements were not about routine, established factual matters, but bore instead on

the very elements of the offense charged. So the defendant had no opportunity to test the trustworthiness of the statements through cross-examination of the probation officer. Allowing the report into evidence would therefore have undermined the defendant's constitutional right to confront the witness.

In contrast, here, the witness who did the analysis and prepared the reports testified. He underwent vigorous cross-examination about the validity of his opinions contained in the two DNA reports. And his testimony mirrored the statements contained in the reports. So the public policy we were concerned about in *Reitenbaugh* and mentioned earlier was served. We therefore fail to see how McCurry was harmed by the admission of these reports. The reports were merely cumulative of evidence already in the record. *See State v. Rice*, 543 N.W.2d 884, 887 (Iowa 1996) (no prejudice where hearsay evidence is admitted and substantially similar evidence is admitted without objection). We find no prejudicial error here.

### IV. *Ineffective Assistance of Counsel.*

■ McCurry also raises an ineffective assistance of counsel claim. He contends his trial counsel was ineffective because he failed to file a timely motion to suppress evidence about two photographic arrays that the police had presented to the victim before trial.

■ Usually we reserve issues of ineffective assistance of counsel for postconviction relief proceedings. *See Rice*, 543 N.W.2d at 888. But we decide such issues when an adequate basis for a decision appears in the record. *Id.* We agree with the parties that the record is adequate for us to decide the issue.

■ To establish his claim of ineffective assistance of counsel, McCurry must show that (1) his counsel's performance fell below an objective standard of reasonableness, and (2) this deficient performance prejudiced McCurry. *See Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984). McCurry can only establish prejudice if he shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v.*

*Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984).

The issue here is whether McCurry's trial counsel successfully secured a ruling on the merits regarding admission of the photographic arrays evidence. If the record shows counsel was successful, we fail to see how counsel breached any professional duty.

The district court's pretrial ruling is critical on this point:

> Twofold, the motion to suppress ... is overruled, that going to the line-up.... [T]he court makes initial notation that pursuant to [Iowa Rule of Criminal Procedure] 10(4), motions to suppress need to be filed within forty days of arraignment. Arraignment in this case was July 11, 1994. The motion was not filed until August 24.... But that in itself is not the sole reason for the court's ruling.
>
> The primary concern of the court and the thrust of its ruling is found in the fact that the [victim's] deposition was taken sometime after the incident and event in question. Any discrepancy [goes] to the credibility and weight to be given that testimony, not to its admissibility; therefore, the motion is overruled.

It is clear from this ruling that the district court reached the merits even though it found the motion untimely. Therefore, had counsel filed the motion on time, the district court would have overruled it anyway. Because counsel secured a ruling on the merits, he breached no professional duty to McCurry.

■ The record also shows that McCurry's counsel made timely objections at trial to the photographic arrays evidence. These objections were enough to cure any claimed breach of duty to file a timely motion to suppress such evidence.

■ Finally, we think the district court properly admitted the photographic arrays evidence. Our review of the record leads us to conclude that McCurry failed to establish either ground necessary to suppress identification evidence. The procedures the police used in displaying the photographs to the victim were not impermissibly suggestive.

Nor was there a substantial likelihood of irreparable misidentification. *See State v. Bedwell,* 417 N.W.2d 66, 68 (Iowa 1987) (to suppress identification evidence, a defendant must show that (1) the procedures used were impermissibly suggestive, and (2) there was a substantial likelihood of irreparable misidentification). So McCurry has established no prejudice.

For these reasons, we conclude McCurry failed to establish his ineffective assistance of counsel claim.

## V. *Disposition.*

The district court committed no reversible error when it admitted the two DNA reports following the DNA witness' testimony regarding the same evidence. McCurry's counsel effectively secured a pretrial ruling and rulings during trial regarding the admissibility of the photographic arrays evidence. McCurry's counsel therefore breached no professional duty to McCurry. Because the district court properly admitted the photographic arrays evidence, McCurry has failed to establish any prejudice. For these reasons, McCurry failed to establish his ineffective assistance of counsel claim. We affirm.

**AFFIRMED.**