# IN THE COURT OF APPEALS OF IOWA

No. 17-0543
Filed April 18, 2018

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**CHRISTOPHER HANSON,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Polk County, Karen A. Romano (plea) and Paul D. Scott (sentencing), Judges.

     A defendant appeals his indeterminate forty-five-year prison sentence following his guilty pleas to six current offenses and the revocation of his probation for six prior convictions.  **AFFIRMED.**

     Jessica A. Millage of Flanagan Law Group, Des Moines, for appellant.

     Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney General, for appellee.

     Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

The district court sentenced Christopher Hanson to a prison term not to exceed forty-five years. Hanson raises two challenges related to his sentence. First, he claims his attorney should have asked to postpone the sentencing hearing after the State revealed Hanson's no-contact-order violations. Second, Hanson contends the district court—when revoking his probation for prior felony convictions—abused its discretion by not considering the possibility of imposing concurrent, rather than consecutive, sentences for those offenses.

Because Hanson cannot show his attorney breached a duty by not seeking a continuance or that prejudice resulted, his claim of ineffective assistance of counsel fails. As for his second claim, because Hanson's direct appeal reaches only the new offenses, we lack jurisdiction to consider the sentence tied to the probation revocation.[1]

## I. Facts and Prior Proceedings

Hanson and E.F. have a child in common and lived together. After Hanson assaulted E.F., she left their shared residence and moved in with her parents. Hanson did not "take the break up well" and threatened to kill E.F. at her parents' home in September 2015. Out of an abundance of caution, E.F. went to stay with her grandparents and was not at her parents' home during the following incident: Around 9 p.m., E.F.'s father was making sure their doors and windows were locked when he smelled cigarette smoke. Nobody in the family smoked. Checking for the source, the father found Hanson hiding in a bedroom closet in the basement.

---

[1] Generally, probation revocation must be challenged in a postconviction-relief action rather than by direct appeal. *State v. Allen*, 402 N.W.2d 438, 441 (Iowa 1987).

Hanson—armed with a large knife—pushed the father and ran out the door. Inside the closet, E.F.'s parents found a duffle bag stuffed with cash and jewelry belonging to E.F.'s mother.

In connection with this incident, the State originally charged Hanson with first-degree burglary, a class "B" felony, in violation of Iowa Code sections 713.1 and 713.3 (2015). The court issued a no-contact order protecting E.F. and members of her family. The matter was set for trial in January 2017, and a jury was selected. But before the State presented evidence, it reached a plea agreement with Hanson. Hanson entered *Alford* pleas[2] to five offenses: (1) second-degree burglary, a class "C" felony, in violation of Iowa Code sections 713.1 and 713.5; (2) assault while participating in a felony, a class "D" felony, in violation of sections 708.1(2)(b) and 708.3; (3) first-degree harassment, an aggravated misdemeanor, in violation of section 708.7(1) and (2); (4) third-degree theft, an aggravated misdemeanor, in violation of sections 714.1 and 714.2(3); and (5) fourth-degree criminal mischief, a serious misdemeanor, in violation of sections 716.1 and 716.6. He also pleaded guilty to a sixth crime—suborning perjury, a class "D" felony, in violation of section 720.3.[3]

The plea-taking court informed Hanson he could face up to twenty-five years in prison for the six counts. At the time of the plea hearing, Hanson was on probation and faced another thirty years in prison if his probation was revoked—

---

[2] *Alford* pleas allow a defendant to consent to the imposition of prison sentence without admitting participation in the acts constituting the crime. *North Carolina v. Alford,* 400 U.S. 25, 37 (1970).

[3] As a factual basis for this count, the State alleged Hanson spoke to a witness about making statements under oath and induced her to "not testify to some things and not say certain things happened" to help him with his criminal case.

for a maximum prison term of fifty-five years. Under the plea agreement, the parties planned to jointly recommend consecutive terms, which would be suspended; Hanson would be on probation for five years, and as a condition of his probation, he would receive treatment at Bridges of Iowa, a substance-abuse program. The plea order provided, "On any new criminal charge or violation of this order, established by a preponderance of evidence, the State is not bound by this agreement."

At the sentencing hearing, the prosecutor told the court Hanson "decided to throw this plea deal away" by violating the criminal protective order 296 times since the plea hearing. The prosecutor then shared the two options he had presented to Hanson: (1) the State could charge 296 counts of violating the no-contact order and ask for sentencing to be continued or (2) Hanson could admit repeatedly calling E.F. from the Polk County jail, knowing she was the protected party, thereby relieving the State of its obligation to recommend probation under the plea agreement. Under the second option, the State agreed to forego filing new charges. Hanson decided to acknowledge that he violated the no-contact order by calling E.F. on the telephone.

The prosecutor recommended the six sentences run consecutively for a total period of incarceration not to exceed twenty-five years. The prosecutor noted Hanson was on probation for "six class 'D' felonies, five forgeries, and one theft, second." The prosecutor continued, "When the first time we had thirty years hanging around this defendant's neck at the time that he got out of jail, and what did he do? He continued to use drugs and continued to commit crimes. That sentence did not deter Mr. Hanson whatsoever." The State also asked the district

court to "run the new case consecutive to the probation cases" for a period of incarceration not to exceed fifty-five years.

Defense counsel emphasized his client's substance-abuse problem and asked for a suspended sentence so Hanson could be placed in long-term treatment rather than prison. During his allocution, Hanson apologized, saying he knew he "messed up" and took "full accountability." He said serving eighteen months in the Polk County jail awaiting sentencing had been "way worse than prison" but he wanted the opportunity to "dive into full extended treatment like Bridges offers."

In pronouncing sentence, the district court underscored the nature of Hanson's offenses and their impact on E.F. and her family, and Hanson's "long history" of criminal behavior. The court decided to run the sentences for five of the six new offenses concurrent to one another, excepting out the suborning perjury count to run consecutive to the others—for a total term of incarceration not to exceed fifteen years. The court reasoned: "Those sentences are being run consecutive to each other due to the serious nature of the offenses and due to the fact of the separate nature of those offenses."

Hanson stipulated to the probation violation; the district court revoked his probation on the earlier convictions and ran the new fifteen-year sentence consecutive to the previously imposed indeterminate thirty-year term, for a total prison term not to exceed forty-five years. The court articulated its reasons as follows:

> Again, the sentences are consecutive based on the separate nature of the offenses, the crimes were committed while you were on

probation, and the numerous victims that are involved.[4]   And as much as it pains me to do it, sir, I'm not putting you on probation.  I'm denying probation for the reasons I've stated earlier in this hearing.

On appeal, Hanson seeks resentencing.

## II.     Analysis

### A.      Ineffective Assistance of Counsel

Hanson contends proceeding with the sentencing hearing after the State withdrew from the plea agreement was not in his "best interests."  Hanson alleges he did not have time to review the State's allegations that he violated the no-contact order and to develop any possible defense.  He argues counsel was ineffective in not asking for a continuance.

We review de novo Hanson's constitutional claim.  *See State v. Ortiz*, 905 N.W.2d 174, 179 (Iowa 2017).  To establish ineffective assistance, Hanson must show (1) his attorney failed to perform an essential duty and (2) the omission resulted in prejudice to Hanson's case.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  On the duty prong, Hanson must prove "counsel's representation fell below an objective standard of reasonableness" considering all the circumstances.  *See id.* at 688.  On the prejudice prong, Hanson must establish but for counsel's unprofessional error, a reasonable probability existed the outcome of the proceeding would have been different.  *See id.* at 694.  In this case, the proceeding involved sentencing.  Inability to satisfy either prong is fatal to Hanson's claim.  *See State v. Neitzel*, 801 N.W.2d 612, 624 (Iowa Ct. App. 2011).

---

[4] The written sentencing order also gave reasons for imposing consecutive sentences, including "all the crimes involved numerous victims (8 victims in all)."  It is not clear from the record on appeal who the court was counting as victims, but the order gives no indication that "all the crimes" encompassed the prior forgery and theft convictions.

We often preserve ineffective-assistance claims for postconviction proceedings, but we will address them on direct appeal if the record allows. *Id.* The parties agree the present record is adequate to assess Hanson's claim.

First, considering all the circumstances, we find defense counsel performed competently. Counsel negotiated a favorable plea agreement, convincing the State to drop the first-degree-burglary charge, which carried a lengthy mandatory-minimum sentence, and did so despite the fact Hanson was already on probation for other offenses at the time he pleaded guilty to the crimes against E.F.'s parents. But Hanson failed to live up to his end of the bargain; he persistently called E.F. from jail, knowing she was the protected party in the no-contact order. By flouting the court order, Hanson left himself with a stark choice at the hearing—postpone sentencing and defend against the State's allegations that he violated the no-contact order nearly 300 times *or* admit the violations and avoid further criminal exposure. Hanson personally chose the second option and in open court confessed to repeated no-contact order violations.[5] In assessing claims of ineffective assistance of counsel, we examine defendant's own conduct as well as that of his attorney. *State v. Rice,* 543 N.W.2d 884, 888–89 (Iowa 1996). On this record, we find Hanson's attorney followed reasonable professional norms, given the situation spawned by his client's own actions leading up to the sentencing hearing.

---

[5] On appeal, Hanson notes he "had already been sitting in the Polk County Jail for approximately fifteen months in hopes of getting the opportunity to enter the Bridges program upon sentencing." He now professes "[a]dditional time in jail for a new sentencing date would not have been detrimental to him." Hanson expressed far different sentiments in the district court, saying his time in jail was "way worse than prison."

Second, even if defense counsel had breached a duty, Hanson cannot show that but for counsel's inaction, it was reasonably probable that the results of the sentencing proceeding would have been different. *See State v. Carrillo*, 597 N.W.2d 497, 500 (Iowa 1999). We are not faced with a case where the State reneged on a plea agreement and prejudice is presumed at the sentencing hearing. *See, e.g.*, *State v. Lopez*, 872 N.W.2d 159, 170 (Iowa 2015). Here, Hanson violated the terms of the plea agreement, freeing the State from its promise to recommend a suspended sentence. Even if defense counsel had sought a continuance, the record reveals no reasonable probability Hanson could have salvaged his plea agreement to keep the joint recommendation for a suspended sentence and received that suspended sentence. In fact, it was quite possible the State would have prosecuted the no-contact-order violations and sought additional incarceration. Hanson's claim fails under the prejudice prong.

## B.    Consecutive Sentences

Hanson next argues the district court abused its discretion by failing to entertain the possibility that when it revoked probation on his preexisting thirty-year sentence, the court could reconfigure those terms as concurrent rather than consecutive. We review the sentencing decision for an abuse of discretion. *State v. Hill*, 878 N.W.2d 269, 272 (Iowa 2016). An abuse occurs when the court exercises its discretion "on grounds clearly untenable or to an extent clearly unreasonable." *Id.* (citing *State v. Barnes*, 791 N.W.2d 817, 827 (Iowa 2010)). A reason is "untenable" when it is not supported by substantial evidence or is based on a mistaken application of the law. *Id.* Unless a certain sentence is mandated by statute, the district court must exercise its discretion. *Id.*

The district court imposed three sets of consecutive sentences. First, the court ran the five-year term for suborning perjury consecutive to the concurrent ten-year sentence for the burglary-related charges (for a total of fifteen years). Second, the court ran that fifteen-year sentence consecutive to Hanson's preexisting thirty-year sentence (for a total of forty-five years). For both of those decisions, the court offered specific reasons as required by *Hill*. But when it came to the thirty-year sentence for which Hanson previously had received probation, as Hanson contends, the district court "seemed to presume that it did not have the authority or discretion to determine the nature of those sentences." Referring to the probation matters, the court told Hanson: "The other crimes. I mean, obviously we need to make a record on that, but you've already been sentenced on those."[6]

The district court's exercise of discretion regarding the original thirty-year sentence is not properly before us. Hanson's notice of appeal refers only to the new case (FECR88775). It is the notice of appeal that establishes appellate jurisdiction. *See State v. Formaro*, 638 N.W.2d 720, 727 (Iowa 2002). We have no jurisdiction to consider the sentences imposed under the probation-revocation case (FECR282859).[7]

**AFFIRMED.**

---

[6] The record indicates Hanson previously had been convicted and received consecutive sentences on six class "D" felonies (five forgeries and one theft) for a total of thirty years; at that time, the district court suspended that sentence and place him on probation.

[7] Although the State does not challenge jurisdiction in this case, "an appellate court has responsibility *sua sponte* to police its own jurisdiction." *See Crowell v. State Pub. Def.*, 845 N.W.2d 676, 681 (Iowa 2014).