# IN THE COURT OF APPEALS OF IOWA

No. 16-2184
Filed June 6, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ROBERT E. CARTER,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Scott County, Mary E. Howes, Judge.

Defendant appeals his convictions for first-degree murder and first-degree burglary. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

Heard by Vogel, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

Robert Carter appeals his convictions for first-degree murder and first-degree burglary. We find the district court did not abuse its discretion in denying Carter's motion for mistrial. In addition, Carter has not shown he received ineffective assistance of counsel. We affirm his convictions.

## I.     Background Facts & Proceedings

Late in the evening on July 15, 2015, Claude Hanson, who was sixty-two years old, was doing laundry at the apartment complex where he lived. His apartment was near the laundry room. When he returned to his apartment, someone threw something over his head and attacked him with a knife, stabbing him in the abdomen and causing defensive wounds on his arm and hand. Claude was able to call 911 for assistance. Police officers, paramedics, and fire fighters came to the apartment. Claude was taken to the hospital. After treatment, he informed officers about what happened. He never saw his assailant.

Crime scene technicians took photographs of Claude's apartment. They found a knife and wallet at the scene, which had blood on them. Officers also took samples of blood found on the door handle to the apartment. At Claude's request, Bradley Hanson, Claude's brother, went to the apartment accompanied by an officer to pick up some items for Claude. Bradley moved some items in the apartment. After Bradley's visit, officers found bloodstains on a grey sweatshirt in the apartment. On July 21, 2015, Claude died of complications from the stab wound to his abdomen.

The Iowa Division of Criminal Investigation (DCI) performed DNA analysis on several items obtained from Claude's apartment. The analysis showed a DNA

profile, identified as male A, on Claude's wallet, the sweatshirt, and the door handle. In October 2015, through a database, the profile of male A matched that of Robert Carter. Officers obtained a new DNA sample from Carter, which again matched the DNA evidence on the items from Claude's apartment.[1]

Carter had been living with his girlfriend, Carmen Jackson, and her mother a few doors down from Claude's apartment for about two years. From the front window of Jackson's apartment, a person could see the laundry room of the apartment complex. When officers approached Carter, he had a scar near his thumb.

Carter was charged with murder in the first degree, in violation of Iowa Code section 707.2(2) (2015), a class "A" felony, and burglary in the first degree, in violation of section 713.3(2), a class "B" felony. During the criminal trial, Officers William Thomas Jr. and Mark Dinneweth both testified it was not uncommon for a suspect to be cut when wielding a knife. Jackson testified Carter was in the apartment sleeping at the time of the assault. The district court denied Carter's motion for judgment of acquittal. A jury found Carter guilty of first-degree murder and first-degree burglary. Carter was sentenced to life in prison and a term of imprisonment not to exceed twenty-five years, to be served concurrently. Carter now appeals his convictions.

## II. Motion for Mistrial

---

[1] For the DNA evidence on the wallet, sweatshirt, and door handle there was less than one out of 100 billion chance the DNA could be matched to someone other than Carter. Claude also had blood under his fingernails, which could possibly be contributed by Carter or fewer than one out of twenty-nine unrelated individuals, showing weaker genetic material.

During the trial, the following exchange occurred in the direct examination of Officer Dinneweth:

> Q. And at some point, then, are you the one that got information regarding this DNA hit we have heard about? A. Yes. I mean, originally, obviously, I get the report that says the unknown DNA is male A, is what they identified it as, a male A profile, which was found quite a few times, and that's automatically entered, which is on the original report. They enter it into the system, which, if you have been arrested before–

At this point, defense counsel objected. The jury was excused and defense counsel moved for a mistrial. The State argued Officer Dinneweth had not finished his statement and would have testified DNA samples could be obtained for additional reasons. The court determined Officer Dinneweth should finish his answer. The jury was recalled, and Officer Dinneweth finished his answer, stating, "Employment, military, many reasons it's entered into the database." The court denied the motion for mistrial, noting the officer had not referenced Carter in any way and had not stated he had a criminal record.

Carter claims the district court should have granted his motion for mistrial. He states the jury improperly received information he may have been arrested. We review a district court's ruling on a motion for mistrial for an abuse of discretion. *State v. Newell*, 710 N.W.2d 6, 32 (Iowa 2006). "A mistrial is appropriate when 'an impartial verdict cannot be reached' or the verdict 'would have to be reversed on appeal due to an obvious procedural error in the trial.'" *Id.* (citation omitted).

We find the district court did not abuse its discretion in denying the motion for mistrial. Officer Dinneweth did not testify Carter had previously been arrested. He testified being arrested was but one way a person's DNA could appear in the database. When he was able to finish his sentence, he stated, "Employment,

military, many reasons it's entered into the database." The officer did not reference Carter in his answer. The jury was not improperly informed Carter had been arrested in the past and this was the reason his DNA was in the database.

### III.    Ineffective Assistance

We conduct a de novo review of claims of ineffective assistance of counsel. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). To establish a claim of ineffective assistance of counsel, a defendant must prove (1) counsel failed to perform an essential duty and (2) prejudice resulted to the extent it denied the defendant a fair trial. *Id.* A defendant's failure to prove either element by a preponderance of the evidence is fatal to a claim of ineffective assistance. *State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003).

**A.** Carter claims he received ineffective assistance because defense counsel did not assert in the motion for judgment of acquittal he could not be convicted on DNA evidence alone. In his appellate brief he states, "No other corroborating evidence established Carter as the perpetrator." He states he should not be convicted based only on DNA evidence because he could be the source of DNA at the crime scene although he was innocent of the crime. He claims his DNA could have been present due to coughing, sneezing, or the transfer from someone else.

We find Carter was not convicted based on DNA evidence alone. Carter's DNA found on the inside of Claude's wallet, a sweatshirt found in Claude's apartment, and the outside door handle to the apartment were certainly factors supporting the verdict; they were not the only factors, however. Carter was living with his girlfriend, Jackson, in an apartment just a short distance from Claude's

apartment. From the front window of Jackson's apartment, a person could see the laundry room, so a person in Jackson's apartment could have been aware Claude was doing laundry and was coming and going from his apartment.

Additionally, in the assault of Claude the perpetrator was injured and left blood at the scene. Carter had a scar between his thumb and forefinger on his right hand. Officer Thomas testified,

> I've seen it common during my career, an individual who is wielding a knife, the knife gets—the handle gets sweaty, blood on it, and the handle slips in the person's hand, and the blade ends up cutting the person's hand in this area right here (indicating). It's very common.

Officer Dinneweth testified, "If you stab somebody, a suspect often gets cut."

We conclude Carter did not receive ineffective assistance due to counsel's failure to argue he should not be convicted on DNA evidence alone because his conviction is supported by more evidence than just DNA evidence.

**B.** Carter also claims he received ineffective assistance because defense counsel did not file a motion for new trial raising the issue his convictions were contrary to the weight of the evidence as they were based on DNA evidence alone. A court may grant a motion for new trial when the verdict is contrary to the weight of the evidence. *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). As noted above, there is more evidence in the record to support Carter's conviction than the DNA evidence. We find Carter has not shown he received ineffective assistance because defense counsel did not argue his convictions were contrary to the weight of the evidence as they were based on only DNA evidence, as this was not the state of the evidence. Defense counsel did not have a duty to file a motion on meritless grounds. *See State v. Rice*, 543 N.W.2d 884, 888 (Iowa 1996).

**C.** Carter claims he received ineffective assistance because defense counsel did not object to the testimony by officers that perpetrators of a stabbing would commonly or often cut themselves while using a knife. He states the officers' testimony about what happened in other cases was not relevant to the present case. Furthermore, he states even if the evidence was relevant, it was more prejudicial than probative.

We first note the crime scene showed there was blood from two individuals—Claude and a person first identified as male A. The presence of DNA taken from blood samples associated with a person other than the victim could lead to the conclusion the perpetrator of the assault was injured in a manner where the perpetrator's blood was left at the scene. The officers' testimony was relevant to help explain this specific factual situation. *See* Iowa R. Evid. 5.401; *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004) ("Evidence is relevant when it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" (citation omitted)).

Relevant evidence may be excluded if the probative value of the evidence is outweighed by its prejudicial effect. Iowa R. Evid. 5.403; *State v. Webster*, 865 N.W.2d 223, 243 (Iowa 2015). Considering there was blood from two people at the scene, and because Claude had been stabbed with a knife, it is not a great leap of logic to conclude the knife might also have injured the perpetrator. In this light, the officers' testimony did not tell the jurors anything they could not have figured out for themselves—the knife might cut a person wielding a knife. We determine the officers' testimony was more probative than prejudicial. "Weighing

probative value against prejudicial effect 'is not an exact science,' so 'we give a great deal of leeway to the trial judge who must make this judgment call.'" *State v. Putman,* 848 N.W.2d 1, 10 (Iowa 2014) (citation omitted).

We find Carter has not shown he received ineffective assistance due to counsel's decision not to object to the officers' testimony on the ground it was not relevant or was more prejudicial than probative.

**D.** In a pro se brief, Carter claims he received ineffective assistance because defense counsel did not file a motion for mistrial during rebuttal closing arguments based on statements by the prosecutor. In discussing the DNA evidence, the prosecutor stated:

> He also asked you, had the defendant ever been in the victim's apartment? Could have been, could have sneezed, could have sweated, but, again, you will get this when you go back into your deliberations; read it. It's not skin cells. It's not saliva. It's blood. It was the defendant's blood.

Carter claims this statement was not supported by the evidence and was misleading to the jurors.

Officer Dinneweth testified the items sent to the DCI were "[t]hings with obvious blood evidence on them." Kristan Evans from the DCI testified to the process of obtaining DNA evidence from the items. For example, she received swabs of suspected blood from the door handle. She performed a test to make sure the substance was blood. She then extracted DNA from the blood. Evans put the DNA into an amplification device and subsequently into the genetic analyzer, which printed out the results. She testified, "That is the procedure that I use for each item of evidence."

The evidence shows the DNA connecting Carter to the offenses was extracted from samples of blood. The prosecutor's statement was supported by the evidence and was not misleading to the jurors, and therefore, defense counsel did not have a duty to object to the evidence. *See State v. Hildebrandt*, 405 N.W.2d 839, 841 (Iowa 1987) (noting counsel cannot be ineffective for failing to make a futile objection).

We conclude Carter has not shown he received ineffective assistance of counsel on any of the grounds he raises on appeal. We affirm his convictions for first-degree murder and first-degree burglary.

**AFFIRMED.**