# IN THE COURT OF APPEALS OF IOWA

No. 20-1651
Filed January 27, 2022

**JUAN ANTONIO NINO-ESTRADA,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Woodbury County, Zachary Hindman, Judge.

Juan Antonio Nino-Estrada appeals the orders dismissing and denying the claims in his application for postconviction relief. **AFFIRMED.**

Matthew R. Metzgar of Widdison Law Firm, Sioux City, until withdrawal, and Judy L. Freking, Le Mars, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee State.

Considered by Tabor, P.J., and Greer and Badding, JJ.

**BADDING, Judge.**

After a shoot-out in an attic that left two people dead and another seriously injured, Juan Antonio Nino-Estrada was charged with two counts of first-degree murder, one count of attempted murder, and willful injury. In his opening statement to the jury, Nino-Estrada's trial counsel framed the issue as: "Die or survive. That's what this is about. Do you die, or do you survive?" The jury did not buy that justification defense and found Nino-Estrada guilty on all counts. In this postconviction relief action, Nino-Estrada claims his counsel was ineffective for failing to more fully develop his justification defense at trial. He also raises two challenges to the instructions given to the jury. Finding no merit to any of these claims, we affirm the district court's denial of Nino-Estrada's application.

## I. Background Facts and Proceedings.

On direct appeal, this court summarized the events of November 7, 2013, which led to Nino-Estrada's convictions:

> [Luis] Sanchez, a drug dealer, was in the attic room of his home conducting drug transactions while a group of people, including Nino-Estrada, gathered with him and smoked methamphetamine. At one point in the evening, an argument began between Nino-Estrada and Sanchez, and Nino-Estrada drew a gun and pointed it at Sanchez.
> Michael Delgado, who had been living in the basement of the home, entered the room pointing a gun at Nino-Estrada. After Nino-Estrada turned his gun on Delgado, they left the room and a scuffle ensued on the stairway landing outside the room. Four or five gunshots were fired. Sanchez went to [the] stairway landing's door and was shot in the knee by Nino-Estrada. Nino-Estrada chased Delgado back into the room and fired several shots at Delgado, who was attempting to hide behind a desk. Delgado, who had been shot in the leg and elbow, then attempted to crawl to the room's door. Nino-Estrada shot him in the back of the head.
> Nino-Estrada then turned his gun to Sanchez. The gun misfired when he pulled the trigger, and Sanchez grabbed Nino-Estrada and pulled him to the floor. As the two men fought, another person in the room attempted to stab Nino-Estrada but accidentally

stabbed Sanchez in the back. Sanchez survived both the stabbing and the gunshot wound to his knee. Delgado died from his gunshot wounds, as did Yolanda Valdez, a bystander who was hit by stray gunfire.

Nino-Estrada fled the house and drove to his girlfriend's apartment with both his gun and Delgado's gun in his possession. Law enforcement officers located Nino-Estrada at the apartment a short time later and transported him to the hospital for treatment of a gunshot wound to his leg. Afterward, he was transported to the police station and interviewed about the night's events. Nino-Estrada denied he had been at Sanchez's home, instead claiming he was shot while walking down the street.

*State v. Nino-Estrada*, No. 15-1386, 2017 WL 108283, at *1 (Iowa Ct. App. Jan. 11, 2017). In challenging his convictions, Nino-Estrada raised claims of ineffective assistance of counsel and error in denying a motion to suppress. *Id.* We rejected those claims and affirmed his convictions. *Id.* at *2-6.

On postconviction relief, Nino-Estrada now claims: (1) trial counsel was ineffective in presenting a justification defense, (2) the trial court erred in instructing the jury on unanimity, and (3) the trial court erred in instructing the jury on the burden of proof for justification.[1] When the State moved for summary disposition, the court dismissed all but the first claim. After a hearing on the merits of that claim, the court determined Nino-Estrada failed to show both that his trial counsel breached a duty in presenting a justification defense and resulting prejudice, and denied Nino-Estrada's application. Nino-Estrada appeals.

## I. Ineffective Assistance of Counsel.

Nino-Estrada first challenges the district court's determination that he failed to show his trial counsel was ineffective in presenting his justification defense. We

---

[1] Nino-Estrada also raised several pro se issues, all of which were denied by the district court. He does not pursue those issues on appeal.

review claims of ineffective assistance of counsel de novo. *See State v. Harris*, 891 N.W.2d 182, 185 (Iowa 2017). To succeed, a postconviction-relief applicant must show counsel failed to perform an essential duty and that failure was prejudicial. *See id.* Prejudice occurred if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 185-86 (citation omitted).

Nino-Estrada alleges that during his trial testimony, trial counsel failed to elicit sufficient detail to show he acted in self-defense. It is true that counsel's direct examination of Nino-Estrada was limited. The following is the entire exchange:

> Q. Would you tell the jury why you stood up with that gun?
> A. I was scared for my life.
> Q. Show you what's Exhibit 304. This is an area by placard I. You recognize that? A. Yeah.
> Q. What's—what's this object in the middle? A. That's my rosary that—that I had around my neck.
> Q. You had been wearing that around your neck? A. (Shook head up and down.)
> Q. Yes or no? A. Yeah.
> . . . .
> Q. You indicated that this was the rosary that you had on? A. Yeah, my rosary. I had around my neck.
> Q. Was that before all this happened? A. Yeah. Yes, sir.

Nino-Estrada argues that because "his defense was to shoot or to be dead," trial counsel should have laid out a timeline of events and developed facts as to why he was scared. He explained at the postconviction-relief hearing that he "wanted to tell my whole story. I wanted to tell everything." When asked what that whole story was, Nino-Estrada testified that he was sitting in the attic,

> smoking dope . . . [and] Mr. Sanchez and my sister were arguing . . . about something. Some money or something like that. And I was just chilling. And all of a sudden there was arguing. And all of a

sudden [Sanchez] jumped on the phone. And he was all like, "Hey, come up here with that 9 millimeter Beretta." And I just—I just dropped everything. I was like, "What? What's that about?" And I jumped up, and I was like, "What's going on?" And you know, I got scared and I jumped up and said, "What's going on?" And I pulled my gun out and I put one in the chamber and said, "What's going on?" He said, "Nothing. Nothing is going on, man. Sit back down, man. Don't be disrespecting my house," something like that.

Nino-Estrada continued:

After that, a few seconds later, Michael Delgado came running up the room, pushed the door open, cocked it and put it at my head.
. . . .
. . . I just reacted. I pulled my gun, I pointed it back at him. He started backing out the room. And I'm thinking he ran down the stairs. So I'm like—I'm just thinking I got to get out of here. So I put my gun back in my sweater pocket and I try to get out of the room. And when I leave the room, I tried to go for the stairs. And I looked to the right and Michael Delgado is hiding in the corner in the shadows. And he jumps out at me with that gun pointed at me. And that's when I grabbed him by the wrist. And I grabbed by the wrist and pulled his hands down. And that's when he started shooting.

At the postconviction hearing, although trial counsel was unable to recall exactly why he limited Nino-Estrada's direct examination, he identified two possible reasons: (1) he wanted to avoid complicity in any perjured testimony that Nino-Estrada wanted to present, or (2) he viewed Nino-Estrada as a "frail witness" who was prone to harm his own defense the longer he testified. In a thorough and well-reasoned opinion, the district court found the record corroborated counsel's explanation, noting that Nino-Estrada testified that trial counsel "said something about the prosecution or something 'opening it up.'" The court found this matched counsel's repeated objections at trial to the State's cross-examination as beyond the scope of direct examination. The court also found trial counsel's testimony to

be more credible than Nino-Estrada's testimony.[2] On this basis, it concluded that counsel "made a strategic decision to limit his direct examination of Nino-Estrada; that [counsel] informed Nino-Estrada of that strategy in advance of trial; and that Nino-Estrada agreed with [the] strategy." The court also concluded "that Nino-Estrada has failed to prove that [counsel]'s trial strategy was anything other than a good one, let alone that that strategy constituted a breach of an essential duty."

We reach the same conclusions on our de novo review. "When counsel makes a reasonable tactical decision, this court will not engage in second-guessing." *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012); *see also State v. Rice*, 543 N.W.2d 884, 888 (Iowa 1996) (counsel is not ineffective for failing to pose specific questions the defendant would have preferred to be asked). There is abundant evidence in the record showing that counsel had concerns about the veracity of Nino-Estrada's story, which was inconsistent in multiple retellings. Had counsel questioned Nino-Estrada more thoroughly, the State could have confronted Nino-Estrada with his prior inconsistent statements from a police interview soon after the shooting. The statements Nino-Estrada made during that interview were, as the district court noted, "not only inconsistent" but "sometimes

_____

[2] The district court's credibility finding was based on: (1) Nino-Estrada's claim that his trial counsel told him he would either be acquitted or convicted of manslaughter, which the postconviction court found to be "extremely unlikely" for an experienced criminal defense lawyer; (2) Nino-Estrada's testimony that his counsel never said anything negative about his story, which is contradicted by a memo his counsel wrote, in which he stated his belief that Nino-Estrada was being deceitful and his story was unconvincing, laying out eight flaws in Nino-Estrada's version of events; and (3) counsel's testimony that if Nino-Estrada had wanted to tell the jury the version of events he gave in the postconviction action, counsel would have done so by asking Nino-Estrada a question that invited a narrative answer. We give weight to these findings. *See Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001).

ridiculous." For instance, although the police gave Nino-Estrada multiple opportunities to tell them the shooting was in self-defense, Nino-Estrada insisted that he was randomly shot on the street while "running from some girl named Holly. I just call her Holly Barry and stuff, sir."

By limiting Nino-Estrada's testimony in the manner he did, trial counsel was able to present an effective argument on justification in closing that focused on the inconsistencies in the other witnesses' stories. And as the district court noted in assessing this claim, counsel relied on other evidence in the record

> to support many of essentially the same arguments that Nino-Estrada now complains he was not able to testify about—e.g., that Nino-Estrada was not the aggressor; that Delgado burst into the attic and pointed a gun at Nino-Estrada's head; that Nino-Estrada was surrounded; and that he was physically attacked by others in the attic before the shooting started.

We agree with the court that it was a reasonable strategy for counsel

> to tailor his closing argument to the weight of the evidence presented to the jury, rather than to present contrary evidence in the form of Nino-Estrada's testimony—which testimony the jury likely would have regarded as less credible, since Nino-Estrada and not the State's witnesses were on trial for murder—and then to attempt to build a closing argument on that.

Even setting aside the strategic reasons trial counsel had for limiting the direct examination, Nino-Estrada has failed to establish a reasonable probability of a different outcome if counsel had performed as he now wishes. As noted, counsel referenced other evidence during closing argument to construct essentially the same version of events Nino-Estrada testified to at the postconviction hearing. Further, multiple witnesses who were in the attic during the shooting testified that Nino-Estrada followed Delgado back into the attic after the scuffle on the landing and shot him in the back of the head before turning his

gun on Sanchez. There is no reasonable probability that a more thorough direct examination would have changed the outcome of trial given the other evidence presented. *See Strickland v. Washington*, 466 U.S. 668, 696 (1984) ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.").

## II.    Jury Instructions.

Nino-Estrada also challenges the district court's grant of summary disposition on his claims that the trial court denied him due process by failing to properly instruct the jury on the legal concept of unanimity and the burden of proof for justification.[3] "We apply our summary judgment standards to summary disposition of postconviction-relief applications." *Moon v. State*, 911 N.W.2d 137 (Iowa 2018). Summary disposition is proper when the facts are undisputed and support judgment for the moving party as a matter of law. *See id.* Although we ordinarily review the grant of summary disposition for correction of errors at law,

---

[3] Like the district court, we question whether Nino-Estrada preserved error on these claims. At the hearing on the State's motion for summary disposition, Nino-Estrada clarified that "[i]n regard to jury instructions, I raised due process, not ineffective assistance of counsel." But trial counsel did not object to these instructions at Nino-Estrada's trial. *See State v. Davis*, 951 N.W.2d 8, 16 (Iowa 2020) (requiring timely objections to jury instructions to preserve error). And no complaint about the instructions was made on direct appeal. *See Berryhill v. State*, 603 N.W.2d 243 (Iowa 1999) (holding "that any claim not properly raised on direct appeal may not be litigated in a postconviction relief action unless sufficient reason or cause is shown," like ineffective assistance of counsel); *see also* Iowa Code § 822.8. The State, however, did not contest error preservation in its responses to Nino-Estrada's postconviction-relief application. *See Nguyen v. State*, 707 N.W.2d 317, 323 (Iowa 2005) (holding the State waived any argument on error preservation by failing to raise it at the district court level). We accordingly bypass any error preservation concerns and proceed to the merits.

our review is de novo when a constitutional claim is implicated.  *See Linn v. State*, 929 N.W.2d 717, 729 (Iowa 2019).

### A.      Unanimity

In instructing the jury on each count of first-degree murder, the trial court provided two alternative scenarios under which it could find Nino-Estrada guilty. The instructions state, "It is not necessary for all jurors to agree to just Alternative A or to just Alternative B.  It is only necessary that all jurors agree to at least one of those two alternatives."  The court also gave Instruction No. 16:

> Where two or more alternative theories are presented, or where two or more facts would produce the same result, the law does not require each juror to agree as to which theory or fact leads to his or her verdict.  It is the verdict itself which must be unanimous, not the theory or facts upon which it is based.

Nino-Estrada does not dispute that the jury instructions correctly state Iowa law.  *See* Iowa R. Crim. P. 2.19(5)(f).  Rather, he notes that other jurisdictions require jury unanimity on the theory of the crime when the State charges a defendant with multiple theories of its commission.  *See, e.g.*, *State v. Muhm*, 775 N.W.2d 508, 517-20 (S.D. 2009).  But we cannot overrule current precedent, as that is the role of the Iowa Supreme Court.  *See State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("Generally, it is the role of the supreme court to decide if case precedent should no longer be followed.").  Because Iowa does not require jury unanimity when choosing between alternative theories, *see State v. Bratthauer*, 354 N.W.2d 774, 777 (Iowa 1984), the district court properly granted summary judgment on Nino-Estrada's claim.

### B.    Justification

Finally, Nino-Estrada contends the district court erred by dismissing his claim that the trial court violated his due process rights when it erroneously instructed the jury on the standard for proving a justification defense.  He claims the trial court should have instructed the jury that the State had to disprove his justification defense beyond a reasonable doubt.

Instruction No. 17 informed the jury that a person may use reasonable force to prevent injury, defined reasonable force, and set forth the circumstances in which a person is justified in using deadly force.  The instruction requires, "The State must prove the defendant was not acting with justification."  But the instruction does not include the phrase "beyond a reasonable doubt."  This mirrored the uniform instruction on justification that was used at the time of Nino-Estrada's trial.  Iowa State Bar Ass'n, Iowa Criminal Jury Instructions 400.1 (2013).

The district court found the jury instructions accurately set forth the State's burden of disproving Nino-Estrada's justification defense beyond a reasonable doubt when considered as a whole.  *See State v. Tipton*, 897 N.W.2d 653, 694 (Iowa 2017) (reviewing jury instructions as a whole to determine whether the instructions correctly state the law).  The court noted that Instruction No. 12 states, "The burden is on the State to prove the Defendant guilty beyond a reasonable doubt."  And Instruction No. 10 states, "You must consider all of the instructions together.  No one instruction includes all of the applicable law."  We agree with this reasoning.

Nino-Estrada points to a recent update by the bar association that amended the uniform instruction on justification to read: "The State must prove beyond a

reasonable doubt that the defendant's use of force was not justified." Iowa State Bar Ass'n, Iowa Criminal Jury Instructions 400.1 (2020). That the uniform instruction was amended seven years later does not establish that the instruction used at Nino-Estrada's trial was in error. *See State v. Heckethorn*, 2021 WL 3392802, at *6 (Iowa Ct. App. Aug. 4, 2021).

Although the better practice would have been to repeat the "beyond a reasonable doubt" language used elsewhere in the instructions to describe the State's burden of proof, the omission was not erroneous because the concept was expressed sufficiently in the instructions as a whole. *See State v. Howard*, 183 N.W. 482, 484 (Iowa 1921) ("Granting that it would have been better for the court to have repeated, in each of these instructions, that the burden rested upon the state to prove beyond a reasonable doubt that the defendant did not take the life of [another] in self–defense, the omission, following the prior instructions, could not have misled the jury."). Because the instruction did not materially misstate the law or mislead the jury, Nino-Estrada's claim fails as a matter of law and the court properly granted summary judgment.

**AFFIRMED.**